## Eastern State Hospital v. Goodman, et al.

(Decided November 5, 1913).

## Appeal from Fleming Circuit Court.

Subrogation—Lunatics—Land Charged for Support—(Right of Asylum to Subrogation.—Where a father, in consideration of past and future support and maintenance, conveys land to his son, and reserves a lien thereon to secure his future support, a state asylum, required by law to maintain pauper lunatics, but authorized, in case the lunatic has or should acquire property, to sue and recover for his support and maintenance, is not entitled to be subrogated to the lien of the father on the land conveyed, to the extent of its claim for the support and maintenance of the father while therein confined.

B. S. GRANNIS for appellant.

J. H. POWER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On April 7, 1908, W. P. Goodman conveyed to his son, W. A. Goodman, a tract of land consisting of about 47 acres, and located in Fleming County, Kentucky. The consideration for the deed was the past support and maintenance of the grantor and his family for a period of about twelve years, and an agreement on the part of the grantee to continue to support and maintain the grantor during the remainder of his life, to pay the expense of a decent burial, and also pay to the other children of the grantor the sum of $5 each. To secure the performance of this undertaking by the grantee, a lien was reserved on the land conveyed.

About a year after the above conveyance was made, the grantor, W. P. Goodman, was adjudged insane, and

was sent to the Eastern Kentucky Asylum for the Insane, now the Eastern State Hospital. He remained there from February 26, 1909, to September 3, 1909, when he returned home for a visit. On November 30, 1909, he was again sent to the asylum, and maintained there until April 9, 1910. The cost of his maintenance during both of these periods, together with the interest thereon, amounted to $140.95.

To recover for the maintenance of W. P. Goodman, plaintiff, Eastern State Hospital, suing by the Kentucky State Board of Control for Charitable Institutions, brought this action in equity, asking judgment for the amount of its claim, and also asking to be subrogated to the rights of the grantor in said land and for the enforcement of the lien retained in his favor. A demurrer was sustained to the petition and the petition dismissed. Plaintiff appeals.

Under section 256, Kentucky Statutes, an insane person is held to be a pauper if unable to pay six months' board in advance; or if married, is unable to pay said board besides providing for others naturally dependent upon him; or if the parents of said person are unable to pay board besides supporting others naturally dependent upon them. It is made the duty of the court holding the inquest to require the jury to return a finding on this subject. If the person declared insane is found to be a pauper, it is the duty of the superintendent to receive him. But the verdict does not limit or qualify such patient's liability for his board should he have or acquire estate subject to debt.

Section 257, Kentucky Statutes, provides that where patients who have been or may be supported in either of said asylums have or shall acquire estate "which can be subjected to debt" the auditor of public accounts is authorized and directed in every such case to sue for and in the name of the asylum and recover the amount of such patient's board at the rate of $200 a year, or so much thereof as such estate will suffice to pay for the time they shall have been respectively kept and maintained therein, and not otherwise paid for, and by proper proceedings subject their estates respectively to the payment thereof.

Sub-section 14, section 217a, confers the same power on the Board of Control.

Plaintiff insists that the foregoing provisions authorize the present action, and that the chancellor erred in denying the relief prayed for. The argument is made that conditions over which neither W. P. Goodman nor his son, W. A. Goodman, had any control, made it necessary for W. P. Goodman to be removed to the Eastern State Hospital. By that removal W. A. Goodman was relieved for a year of the expense and care of maintaining his father, and that burden was cast on plaintiff. Plaintiff having been compelled to assume the burden which belonged to defendant, and to secure the performance of which a lien was expressly retained on the real estate conveyed to defendant by his father, that real estate should be made to repay plaintiff for the burden thus assumed.

While the authorities cited by plaintiff do hold that a person not a volunteer who makes advancements for necessities for, or to pay off an incumbrance on the real estate of, one mentally incompetent to contract, is entitled to a charge against his estate, and to be subrogated to the benefit of the incumbrance discharged, 37 Cyc., 467, Coleman v. Frazer, 3 Bush, 300; and that one who furnishes money and services in good faith for one for whose support land is charged is entitled to be subrogated to the rights of the beneficiary, and has a lien on the land, Cutter v. Burroughs, 100 Maine, 379; the facts of this case differentiate it from the cases relied on. The contract in this case between the father and the son was personal to the son, and did not contemplate the support of the father elsewhere than at the son's home. Currier v. Currier, 9 Am. Dec., 43; Wilder v. Whittemore, 15 Mass., 262; Garret, &c. v. Mosby, 10 Ky. L. Rep., 723; Shultz & Co. v. Johnson's Admr., 5 B. Mon., 497. The lien retained on the land was to secure the personal undertaking of the son. In the absence of fault on the part of the son, the contract did not authorize the father to go elsewhere and require the son to support him.

In this case there was no fault. The son was at his home, ready, willing and able to maintain and support his father. The fact that he did not perform the services contemplated by the contract during his father's confinement in the asylum was due solely to his father's insanity. The plaintiff took charge of the father because the law required it to do so, and not on the faith of the lien that had been reserved on the land deeded to the

son to secure the father's support. To hold plaintiff subrogated to the lien of the father in a case like this would not only impose on the son an obligation not contemplated by the parties, but in many instances would burden the land with a charge far in excess of that fixed by the contract. Subrogation is an equitable doctrine, invented and applied for the purpose of doing justice; it should not be applied in a case where injustice would result.

Judgment affirmed.