## McCain, et al. v. McCain.

(Decided November 30, 1915.)

### Appeal from Marion Circuit Court.

Appeal and Error—Judgment of Chancellor in Equity Action—Weight Entitled to.—Where the evidence in an equitable action is so conflicting as to leave the mind in doubt as to the truth of the matter, this court will adopt the finding of the chancellor.

S. A. RUSSELL and BEN SPALDING for appellants.

HUGH P. COOPER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

In 1886 M. A. McCain, who died in 1908, made his will, and in 1898 wrote a codicil. In the will and codicil he gave his estate to certain described persons, all of whom were dead when the will was probated in 1908, except the parties to this litigation, who are his niece, Bettie McCain, and his nephews, W. L. and John E. McCain, brothers of Bettie McCain. John McCain and Bettie McCain were nominated as executor and exe cutrix, but Bettie alone qualified in May, 1908.

In 1912 this suit was brought by John McCain against W. L. McCain, Bettie McCain individually and as executrix, and some creditors of the estate, for the pur pose of settlement, and the only issues in the case arise between the McCains, and these will be hereafter stated.

After a great volume of evidence was taken the case was submitted to the commissioner of the court to make a report and settlement of the matters in issue between these parties. To the commissioner's report numerous exceptions were filed by Bettie and W. L. McCain as well as John McCain, and from the judgment of the court on these exceptions Bettie and W. L. McCain prosecute this appeal and John McCain prosecutes a cross-appeal.

Bettie McCain presented a note against the estate for $500, with interest thereon, and the justness of this claim was contested by John McCain on several grounds. But both the court and the commissioner allowed this claim, and after reading the evidence we are not inclined to disturb the finding of the chancellor on this issue of fact, although there is evidence in the record tending to show that the note was not the act or deed of M. A. McCain, and also tending to show that Bettie McCain did not have this amount of money to lend to her uncle.

It further appears that during the life of M. A. Mc Cain W. L. and John McCain who were then apparently on friendly terms, operated a saloon and perhaps a grocery store in the city of Lebanon. This venture, how ever, proved to be unsuccessful, and a loss of some $1,900 resulted. It was contended in the lower court and on this appeal by John McCain that this loss should be borne entirely by the estate, as the saloon, although operated in the name of McCain Brothers by himself and W. L. McCain, was, in fact, owned by M. A. McCain, and consequently his estate should bear all the burden

from the failure in its operation. On the other hand, W. L. McCain claims that the saloon was, in fact, owned and operated by John McCain, and therefore he should bear the burden of the loss. The court, however, sustained the finding of the commissioner on this subject and found that the indebtedness resulting from this evidence should be charged equally against John and W. L. McCain, and of this judgment both of them complain. It would serve no useful purpose to go into the complicated and contradictory evidence on the subject of the ownership of this saloon or who should bear the loss resulting from its operation. We think it sufficient to say that there was ample proof to sustain the finding of the chancellor on this issue of fact.

Another controversy grows out of the rent of a farm owned by M. A. McCain. This farm, it seems, was operated by W. L. and Bettie McCain, and it is claimed by John McCain that they should be charged with rents in quite a large sum, while they contend that they should not be charged any rent. The lower court, however, charged them with $750 rent before M. A. McCain died and with $1,800 rent accruing after his death, and of this both parties complain, John McCain insisting that the charge for rent was entirely inadequate, while Bettie and W. L. McCain insist that they should not be charged any rent. On this issue, as on the others, there is conflict in the evidence, but the finding of the lower court on this disputed issue of fact is supported by sufficient evidence to sustain it and will not be disturbed.

There is also a contention on the part of John McCain that Bettie McCain should be charged with the value of a lot of personal property that came into her hands as executrix with the value of which the lower court did not charge her. On this issue as well as on the others, after reading the record, we are disposed to agree with the finding of the court.

After stating the accounts between the parties substantially as we have set out, the court found that the balance of the estate should be divided equally between these three parties, and of this complaint is made by Bettie and W. L. McCain based on two documents purporting to have been signed by M. A. McCain, one in 1902 and the other in 1903, in which he set out that he did not wish John McCain to have any part of his estate, as he had advanced him more than his share. These pa-

pers, however, were not of a testamentary character, and there is considerable question as to their verity. The lower court did not treat them as binding in the distribution of the estate, nor will we.

Bettie and W. L. McCain also question so much of the judgment as allowed the attorney for John McCain a fee payable out of the estate. The suit was brought by John McCain for a settlement of the estate, and of course under the ordinary rules prevailing in cases like this his attorney was entitled to a reasonable fee payable out of the estate. It is true that a part of the service rendered by the attorney for John McCain was devoted to what might be called personal services growing out of efforts to prevent certain charges against him, but the bulk of the service was performed in resisting claims asserted against the estate by Bettie and W. L. McCain and in seeking to charge them with claims asserted against them by the estate, and we are disposed to the view that on this question the judgment of the chancellor should be affirmed.

It will be observed that this case involves purely questions of fact growing out of contentions between these closely related parties, and as in all cases like this, it is difficult to get at the exact truth of the matter, but after reading the record we believe that the conclusions reached by the chancellor are as fair as any that could be arrived at from a consideration of the evidence.

Wherefore, the judgment on the original and cross-appeal is affirmed.