LUCETTA N. ARCHIBALD

*vs.*

THE GRANITE STATE FIRE INSURANCE COMPANY.

Androscoggin.     Opinion March 22, 1918.

*Contracts of fire insurance.    Proofs of loss.    Rule as to the insured being bound by proofs of loss if made by person other than the insured, although accepted by the insured as her own.    Overvaluation in proofs of loss.    General rule governing the question of whether the overvaluation is fraudulent or otherwise.*

In an action of assumpsit on a policy of fire insurance, the defendant set up fraudulent overvaluation in the proof of loss.    After verdict for the defendant upon plaintiff's motion for a new trial and exceptions, it is

*Held:*

1.    Mistaken and honest overvaluation is not, but intentional and fraudulent overvaluation is fatal to recovery.

2.    The issue was one of fact for the jury and we are unable to say that the verdict was palpably wrong.    Upon the question of overvaluation the evidence was strongly in favor of the defendant.    Whether it was a fraudulent overvaluation was for the jury to determine and we do not feel justified in reversing their finding.

3.    The fact that many of the values were stated by the plaintiff after consultation with and reliance upon her husband does not relieve her from all the responsibility attaching to her figures.    The manner in which the proof of loss was made up was a proper matter of consideration by the jury, but she could not blindly adopt his estimates as her own and shirk all responsibility as to their correctness.

4.    The question put by the plaintiff's counsel to the plaintiff's husband inquiring if anything was said by the broker at the time the insurance was effected, as to additional insurance was properly excluded.    No such statement was binding upon the company, and could at best only reveal his idea of value at the time and its repetition was merely hearsay.    Moreover the broker was a witness at the trial so that the plaintiff received the full benefit of his opinion.

5.    The question put to the broker as to whether he did anything or attempted to do anything to defraud the company at the time the insurance was effected,

was properly excluded as being immaterial. There was no claim of fraud in the inception of the policy, but of false and fraudulent overvaluation after the fire occurred.

6. The admission of the evidence offered by the defendant that several other colts out of the same dam as the burned stallion Dexter R. were afflicted with a spavin, did not substantially prejudice the plaintiff. The more vital point was whether Dexter R. himself was spavined, and upon that question there was convincing evidence of the fact.

Action of assumpsit on policy of fire insurance. Defendant filed plea of general issue; also following brief statement. "That the proofs of loss furnished to the defendant by the plaintiff under the requirements of the policy of insurance and under the law are fraudulent in that they contained claims for articles not destroyed by fire and a gross and fraudulent overvaluation of certain items of property which were destroyed by fire and being so fraudulent, under the contract of insurance void." Verdict for defendant. Plaintiff filed motion for new trial; also exceptions to certain rulings of presiding Justice relating to the admissibility of certain testimony. Judgment in accordance with opinion.

Case stated in opinion.

*McGillicuddy & Morey*, for plaintiff.

*W. R. Pattangall, and H. E. Locke*, for defendant.

SITTING: CORNISH, C. J., SPEAR, BIRD, PHILBROOK, JJ.

CORNISH, C. J. This is an action of assumpsit on a policy of fire insurance in the defendant company, and after a verdict for the defendant, the case is brought to the Law Court on plaintiff's motion and exceptions.

MOTION.

The issue of fact before the jury was the fraud of the plaintiff in making up her proof of loss, by fraudulent overvaluation of lost articles. Mistaken and honest overvaluation is not, but intentional and fraudulent overvaluation is fatal to recovery. *Dolloff* v. *Ins. Co.*, 82 Maine, 266; *Rovinsky* v. *Ins. Co.*, 100 Maine, 112; *Pottle* v. *Ins. Co.*, 108 Maine, 401; *Cole* v. *Ins. Co.*, 113 Maine, 512. This issue of fact was sharply contested before the jury and after a long trial it was decided in favor of the defendant. No exceptions were

taken to the charge of the presiding Justice and therefore we have the right to assume that the legal distinctions were properly and clearly drawn and the jury were made to understand the precise question which they were called upon to decide. The burden now rests upon the plaintiff to persuade this court that the verdict was so manifestly wrong as to indicate some bias or prejudice on the part of the jury or their failure to appreciate the force of the evidence and apply to it the pertinent rules of law. This burden has not been sustained, although had the question been primarily submitted to us as a question of fact we might perhaps have reached a different conclusion. The cold type cannot visualize the controversy to the court as could the living witnesses to the jury. The jury therefore had an advantage of which we are deprived. So far as bias and prejudice are concerned, we should expect them to operate, if at all, against an insurance company and in favor of a private individual, especially if that individual be a woman. Sympathy here would naturally have been on the side of the plaintiff rather than of the defendant.

The evidence is voluminous. Its careful study does not force us to a reversal of the verdict. It appears that the plaintiff and her husband lived on a farm in the town of Poland, the title being in the wife. Their farm house, a substantial building, had been burned a few years before. They then converted a garage, sixteen by twenty-six feet in size, into a dwelling. This was one story or one story and a half in height, had three rooms on the ground floor, a combination living room, dining room and kitchen, and a bed room and bath room. The walls were unplastered but were sheathed. There was no cellar. The attic was unfinished. This was the dwelling, which was insured for $1,000. and which was valued in the proof of loss at $1,000.

The other buildings consisted of a garage, twelve by twenty feet recently built, insured for $300. and valued in the proof of loss at $500.; a barn 36 feet square, thirty or forty years old, recently shingled and painted, insured for $1,000. and valued at $1,000., and three or four small outbuildings of little value. The amount of insurance was largely increased when this policy in controversy was taken out on November 15, 1915, the total on buildings and personal property being $4,950. and the total value claimed in the proof of loss being $7,833.53. This proof of loss was made up as follows: $3,000. sworn value of the buildings, $1,498.83 of household goods and furni-

ture, wearing apparel, etc., contained in the dwelling, $224.70 contents of garage, $560. farm produce, $750. for pair of work horses and a colt Nigger, $1,000. on stallion Dexter R. and $800. on colt Lady M. The itemized proof covers thirteen printed pages of the record, and while the existence and the claimed value of the various articles are testified to by the plaintiff and her husband, we can see how the jury may have viewed such a formidable list with suspicion and have discovered signs of gross and wilful overvaluation from the situation as a whole. The figures look extravagantly large, as for instance $1498.83 household goods, furniture, wearing apparel, etc., and $224.70 contents of the garage. It was of course difficult if not impossible for the Insurance Company to ascertain the facts as to the separate items of personal property, but their very bulk was significant and somewhat disproportionate to the size and capacity of the buildings supposed to contain them.

The nature and value of certain items however could be more readily ascertained and against these the evidence was sharply directed.

Take the value of the buildings, claimed to be worth $3,000. Beside her husband the plaintiff had only two witnesses on this point, one the broker who placed the insurance, and the other a carpenter. The broker may have been anxious to justify the amount of insurance and hence the amount of his commission, and he valued the buildings at $2600., while the carpenter considered the house and garage to be worth $1400. to $1700. apparently on the basis of a replacement value. On the other hand the defendant introduced four witnesses, including neighbors and a member of the board of assessors, who varied in their estimates as follows: two placed the value at $550., one at $600. to $750. and one at $1100. The evidence clearly preponderated in favor of the defendant on the value of the buildings.

Another point in controversy was the value of a pair of work horses, one about ten years old and the other about twelve, one being lame. These had been bought by the plaintiff four or five years before for the sum of $200. They were valued in the proof of loss at $500. Only one witness for the plaintiff beside Mr. Archibald testified as to their value, and he placed it at $400. to $500. On the other hand four witnesses for the defendant who had known the horses well and one of whom had sold them to the plaintiff testified that they were worth from $150. to $200. This discrepancy was large.

Another item of attack by the defendant was the claimed value of the stallion Dexter R. This horse had been purchased by Archibald when he was four years old, sound, and without a record, for four hundred dollars. At the time of the fire he was eight or nine years old, with a mark of 2.19¼, which was a handicap, and with a spavin on one leg according to credible testimony. He had been used somewhat for breeding purposes. The value in the proof of loss was set at $1,000. Two witnesses for the plaintiff, beside her husband, estimated the value to be $800. or $1,000. Seven witnesses for the defendant fixed it at from $150. to $275. Here again the difference was significantly wide.

It is unnecessary to go into further detail. Viewing the whole case impartially we are unable to say that the verdict of the jury is so palpably wrong that it should be set aside. Upon the question of overvaluation we think the evidence was strongly in favor of the defendant, and whether it was or was not an intentional and fraudulent or merely a mistaken and honest overvaluation was for the jury to determine. They have determined that question by their verdict and we do not feel warranted in reversing their finding.

The fact that many of the values were stated by the plaintiff after consultation with and reliance upon her husband does not necessarily change the situation, and does not relieve the plaintiff from all responsibility attaching to the figures which she gave. It was her proof of loss and if she consulted her husband in preparing it and accepted his figures, and stated them to be true, she was not thereby necessarily freed from all legal responsibility. The manner in which she made up her proof of loss was properly before the jury as bearing upon the question of her good faith and upon the intentional and fraudulent overvaluation of her loss. Its weight was for the jury to estimate, considering all the circumstances of the case. She could not blindly adopt his figures as her own and shirk all responsibility as to their correctness.

In *Mullen* v. *Insurance Co.*, 58 Vt., 113, the policy stood in the name of the husband, and the wife made out proofs of loss covering the household goods, as she was much better informed concerning these than was he. He adopted it without investigation. On this point the court say: "The evidence tended to show that the wife included many articles not lost, some greatly overvalued, which had been purchased by the plaintiff himself and some that he never pur-

chased at all. , The plaintiff took his wife's inventory without scrutiny, swore to it, not knowing whether it was correct or otherwise; and it turned out to be grossly incorrect and false. . . . The company was entitled to a truthful inventory of the property lost. The plaintiff's duty under the policy was to supply it; his representations must be true in fact. He cannot even be honest by turning the matter over to his wife and omit to inspect her inventory to see if it be correct. If he had looked it over and wished to be honest, he would have discovered many false statements which were calculated and probably were intended to work a fraud upon the defendant. He could have arrested this intended fraud if he had done his duty. On the contrary he recklessly indorsed it without examination and by so doing made it his own within the meaning of the policy."

The facts in the case at bar do not go to the extent of those in the case just cited, but the principle that the insured must be held responsible for the truthfulness and accuracy of her proof of loss runs through both. The fundamental question of fraud or no fraud remained for the jury. The motion must be overruled.

EXCEPTIONS.

(1) The first exception relates to the exclusion of a question put to Mr. Archibald by the plaintiff's counsel inquiring if anything was said by the broker at the time the insurance was effected, as to additional insurance.

This ruling was correct. No such statement by the broker was binding upon the company. It could at best only reveal the broker's idea of the value of the insured property at the time, and its repetition by Archibald was merely hearsay. Moreover the broker was a witness for the plaintiff so that the latter obtained the full benefit of his opinion at the trial and before the jury. He was not harmed by the exclusion.

(2) The second exception arises from the exclusion of a question asked of the broker as to whether he did anything or attempted to do anything to defraud the company when he put on this insurance

This ruling was without error. There was no claim of fraud in the issuing of the policy, but of false and fraudulent overvaluation after the fire had occurred. The evidence was immaterial and irrelevant.

(3) The third exception covers the admission of a question put to one of the defendant's witnesses as to whether several other colts out of the same dam as Dexter R. were afflicted with a spavin.

The affirmative answer could have little effect upon the issue in this case, except as perhaps showing a tendency to transmit the defect. It could not have substantially prejudiced the plaintiff. The more vital point was whether Dexter R. himself was spavined, and upon that question there was convincing evidence of the fact.

Our conclusion therefore is that the entry must be,

*Motion and exceptions overruled.*