BELLE AUSTIN

*vs.*

MAINE FARMERS MUTUAL FIRE INSURANCE COMPANY.

Somerset.    Opinion December 27, 1927.

*If a plaintiff in an action on a policy of fire insurance falsely and knowingly inserts in his sworn proof of loss, any articles as burned which were not burned, or knowingly puts such a false and excessive valuation on single articles or on the whole property as displays a reckless disregard of truth, he cannot recover.*

*In such an action if the defendant alleges fraud the burden is upon him to prove it.*

In this case the owner was miles away, the property quite properly in the charge of her husband, and nothing but inference is incorporated in the testimony to prove the fraudulent and criminal act charged against the owner.

The question of the existence of a criminal intent on the part of the owner, of negligence, and the degree thereof were peculiarly questions for the jury and the verdict is sustained.

On general motion for a new trial.    An action of assumpsit on a fire insurance policy.    Defendant pleaded the general issue and under a brief statement alleged that plaintiff's proofs of loss contained fraudulent statements, and that the fire was set by the plaintiff or through her procurement.    Verdict for plaintiff.    General motion for new trial filed.    Motion overruled.

The case fully appears in the opinion.

*Harry R. Coolidge and J. H. Haley,* for plaintiff.

*L. A. Jack and Arthur J. Dunton,* for defendant.

SITTING: PHILBROOK, DEASY, STURGIS, BARNES, BASSETT, JJ.

BARNES, J.    Farm buildings, consisting of a story and a half house with ell, containing six rooms and hall on the ground floor, with one finished room above, a barn the dimensions of which are not given,

tho the "tie-up" is described as about 36 feet long, four hen houses, each 8 or 9 feet square, and a shop, seven by nine feet, together with certain house furniture and furnishings valued at $72.00, insured by the defendant, were destroyed by fire on Nov. 29, 1925.

The amount of insurance on the buildings was $1250.00, and on the contents of the house $300.00, wholly with the defendant.

The policy is of the Maine Standard form, and at the time of the fire all premiums due had been paid.

Suit was brought by the owner and occupant; a verdict rendered for $1322.22, and the defendant brings the case up on the general motion for a new trial.

The fire was discovered between the hours of six and seven o'clock in the morning of a day when the only tenants were plaintiff's husband and sons, the boys said to be deer hunting, the plaintiff then and for a few weeks theretofore living temporarily in the village of Hartland, seven miles distant from the insured property with her daughters, that they might attend school.

Defences argued on appeal were:—

1. "The proofs of loss furnished to the defendant by the plaintiff under the requirements of her policy and under the law, are fraudulent in that they contain a gross and fraudulent over-valuation of certain items of property which were destroyed by fire, and being so fraudulent, render said policy void.

2. The actual cash value of the property insured by the plaintiff's policy at the time immediately preceding said fire was less than the amount for which said property was insured by said policy, and by the terms of said policy plaintiff could recover only three-fourths of said value in any event.

3. The fire which caused the loss complained of in the plaintiff's writ and declaration was set by the plaintiff or through her procurement.

4. The damages are excessive."

Discussion of defendant's claims under all but the third reason for appeal may proceed as though they were included in one.

The only testimony in support of the action was that of the plaintiff herself, who had lived on this farm and in the house now destroyed for eleven years.

She testified that she paid for the farm, in accordance with a contract made in 1914, the sum of $1300.00; that she had made repairs and additions to the barn and house with an outlay of $250.00 and much labor on the part of her husband and herself.

In the proof of loss she declared the house to be worth $2000.00, the barn $800.00, the four hen houses, and the shop $40.00. These buildings were entirely destroyed.

Of the insured furniture and furnishings, articles which she specified as burned were stated by her to have been worth $72.00.

Among the latter were two chamber sets, valued at $10.00 each, which she testified were stored by her, before she went to Hartland, in the upper part of the house.

Part of the chamber sets were two wire springs, and because a witness testified that no remains of bed springs were found by him in the residue in the cellar, after the fire, defendant claims over-valuation of the chamber sets. As to the other articles of personal property, for the loss of which claim is made, defendant raises no issue.

If, for purposes of illustration, we assume that the proof of loss was received by the defendant on Feb. 20, 1926; verdict April 8, 1927, and that the jury considered the loss of $72.00 on the personal property as proven, the amount found by the jury as indemnity for loss on the buildings would be $1187.04, they having thereby found the actual cash value of the buildings to be $1582.72. We find in the record certain express testimony on which they must have based their findings.

They had the testimony of the plaintiff, a farmer's wife, who may have had not much experience in valuing farm buildings, nor much education, but who coveted education for her daughters, as the evidence shows. She testified that the hen houses and shop were worth $140.00, and that the replacement value of the house, ell and barn was $2750.00.

Two witnesses for the defendant, assessors of the town, testified that a fair valuation of the buildings was $700.00, or "right around $700.00."

With this testimony the jury set the value called for in the contract of insurance at approximately $1582.72, and, regardless of what might be the individual opinions of members of this Court, if we

were attempting to arrive at such value, after having heard the evidence, we cannot say, on this point, that their verdict is wrong. .

In the proof of loss plaintiff had set the "whole value" of the buildings destroyed as $2940.00. Was this such gross and fraudulent over-valuation as to render the policy void?

She testified that the figures set out in the proof of loss as the value of the buildings destroyed was her idea of their replacement value.

"It is a firmly established legal doctrine that if a plaintiff in an action on a policy of fire insurance falsely and knowingly inserts in his sworn proof of loss, any articles as burned which were not burned, or knowingly puts such a false and excessive valuation on single articles or on the whole property as displays a reckless disregard of truth, he cannot recover. His own fraudulent act prohibits it." *Pottle* vs. *Insurance Co.*, 108 Me., 401.

But, not every statement in a proof of loss which is proven to be false is such a false statement as to render the policy void. "Replacement value alone is not sufficient evidence of false swearing." *Hilton* vs. *Phoenix Assurance Co.*, 92 Me., 272.

"A false answer as to any matter of fact material to the inquiry, knowingly and wilfully made, with intent to deceive the insurer, would be fraudulent. If it accomplished its result, it would be a fraud effected; if it failed, it would be a fraud attempted. And if the matter were material and the statement false, to the knowledge of the party making it, and wilfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts." *Claflin* vs. *Commonwealth Insurance Co.*, 110 U. S., 81, 85.

To effect avoidance of a policy of insurance, statements of the insured as to a material matter must be known by him to be false, and be wilfully so made.

"To avoid the policies, it must be shown that the statements in the proofs of loss were knowingly and intentionally untrue." *Cole* vs. *Insurance Co.*, 113 Me., 512. "Mistaken and honest over-valuation is not fatal to recovery." *Archibald* vs. *Fire Insurance Co.*, 117 Me. 205.

"It is settled law in this state that if the insured, knowingly and purposely makes false statements on oath in his proofs of loss in relation to the amount or value of the goods destroyed, the policy is

thereby voided. Erroneous estimates and innocent mistakes are not a cause of forfeiture." *Hanscom* vs. *Insurance Co.*, 90 Me., 333, 350.

The law, as given by the Justice before whom *Linscott* vs. *Insurance Co.* (88 Me. 497) was tried, is still the law upon this point, namely, "If a man attempt to defraud the company by reason of false swearing, then by our statute he has forfeited his whole claim. If he is blameless in these particulars, but although inaccurate, although he has made misstatements that are not chargeable to his dishonesty, not chargeable to his falsehood, not chargeable to his desire and determination to cheat and defraud and deceive, but are mere mistakes of either judgment or memory, then, gentlemen, you will deal with the witness accordingly."

Whether the statements of the plaintiff in her proof of loss, as to value of buildings or other property, were known to her to be false, and were willfully and dishonestly so falsely made were questions for the jury. *Archibald* vs. *Insurance Co.*, supra, *Hilton* vs. *Phoenix Assurance Co.*, supra.

By their verdict the jury have said that no such statements have been made as should forfeit the policy, and there is not evidence enough to the contrary to justify interference by this Court.

As to the value which the jury placed upon the chamber sets when considering whether or no the springs were burned, they may have decided that the father and sons were using these springs on their beds downstairs, or may have valued the chamber sets at $10.00 each without the springs. Again they may have deducted something for the value of the springs. We have no information how they arrived at the sum total of value of the separate articles or the several buildings, but we assume they did not set a higher value than three-fourths of $72.00 for the personal property burned.

Considering now the third defence;—The fire "was set by the plaintiff or through her procurement."

The burden is on the defendant, alleging such fraud, to prove it. The evidence is clear that the occupancy and control over the lost property was that of a husband in the home of his wife. What the near neighbors saw of the portions of the buildings in combustion, when aroused by the husband's call for help, and the quarter from

which the wind was then blowing is all the evidence in the record upon this point.

Cases decided in other jurisdictions, where the facts are somewhat similar to those detailed here, throw light on the law applicable. "The policy on a dwelling house was issued to Foster (mortgagee) and Baumhard (mortgagor); loss, if any payable to Thomas J. Foster as his interest may appear. It was contended that the evidence tended to prove that the building was burned by Baumhard. Held: The insurance "was payable to Foster, and he alone could recover upon it, and if it was true that Baumhard caused the building to be burned, without the knowledge or assent of Foster, Foster's rights could not be affected by the unlawful acts of Baumhard." *Westchester Fire Insurance Co.* vs. *Foster*, 90 Ill., 121.

Evidence in another case was produced that a son of plaintiff was in charge of the burned store as plaintiff's agent and employee; that on the evening before the fire the son built in the stove of said store a fire composed of combustible timbers, which was calculated to increase the danger of fire to said building, and that when the attention of the son was called to this likelihood of causing fire in the store, he said, "I don't care; let her go to hell."

Held: "It was not alleged that the (Insured) ordered or directed the stove to be filled with combustible material at night, or that he ever had any knowledge or notice that it had been done.

Under no theory of law or justice is he chargeable with the alleged wrongful act of his son." *Malin* vs. *Merchantile Town Mutual Insurance Co.* 180 S. W. 56.

As to the liability of defendant for the negligent acts of the insured and her husband, the law seems to be well settled. Story, J., in the *Columbia Insurance Co.* vs. *Lawrence*, 10 Peters, 507, remarks: "In relation to insurance against fire on land, the doctrine seems to have prevailed, for a great length of time that they cover losses occasioned by the mere faults and negligence of the assured and his servants, unaffected by any fraud or design", (citing authorities).

It has been held that this rule will not excuse extreme, reckless and inexcusable negligence on the part of the assured, the consequence of which must have been palpably obvious to him at the time. *Mickey* vs. *Burlington Insurance Co.* 35 Iowa, 174, 14 Am. Rep., 494.

Testimony as to gross negligence and carelessness, and gross misconduct, of the plaintiff in an action to recover on an insurance policy, is admissible.    *Chandler* vs. *Worcester Mutual Fire Insurance Co.* 3 Cush. 328.

And there is some discussion of the effect of gross negligence on the part of the owner of burned property in the case, *Bouchard* vs. *Dirigo Mutual Fire Insurance Co.*, 114 Me., 361.

But in the case at bar the owner was miles away, the property quite properly in the charge of her husband, and nothing but inference is incorporated in the testimony to prove the fraudulent and criminal act charged against the owner.

A clear statement of the principles of law applicable to the state of facts in the case on trial must have been given by the learned justice who presided at the trial, for no exceptions were taken; the question of the existence of a criminal intent on the part of the owner, of negligence, and the degree thereof were peculiarly questions for the jury, and our conclusion is that their verdict is sustained.

*Motion overruled.*