## Taylor, et al. v. Taylor, et al.

(Decided March 13, 1928.)

(Rehearing Denied, with Modification, April 24, 1928.)

Appeal from Marion Circuit Court.

1. Executors and Administrators.—Where executors paid taxes out of sum received, with which they charged themselves, they were entitled to credit for taxes paid.

2. Executors and Administrators.—Where executors paid commission to land company for selling part of lands belonging to estate, executors were entitled to credit for commission paid, though son of one of executors was interested in land company.

3. Executors and Administrators.—Executors held not entitled to credit for sums paid to nurses and physicians for services to testator during his last illness at hospital, where they had individually contracted with testator to support and care for him during his life.

4. Executors and Administrators.—Executors held entitled to commission on amount which was received by them as devisees, since personal representative is entitled to commission allowed for distribution of estate, and it does not make any difference to whom money is paid when it is distributed.

5. Executors and Administrators.—Although, where one of executors performs no service, compensation goes to one performing service, where services are performed jointly, or where one performs major portion of services, and the other is ready and willing to do his part, statutory compensation must be divided equally.

6. Executors and Administrators.—Where one executor made trips into another state regarding property, where it was unnecessary for both to go, and the other executor performed at least a part of services, and was willing to perform fully his proportion of services, statutory compensation must be divided equally, but one performing extraordinary service was entitled to extra allowance therefor.

7. Executors and Administrators.—Where suit to settle an estate is instituted by one of interested parties, and prosecuted to judgment, attorney representing party is entitled to compensation for his services out of estate, under Ky. Stats., sec. 489.

8. Executors and Administrators.—Under Ky. Stats., secs. 489, 889, attorney, representing devisee instituting suit for settlement of estate, and prosecuting same to judgment, held entitled to compensation for services out of estate, where no other party joined in prosecution of suit to have estate settled, but some of devisees filed answers, and sought to reach executors by cross-petition, but none offered to join in prosecution of suit for settlement of estate.

9. Attorney and Client.—Amount of fee to which attorney representing party instituting suit to settle estate was entitled out of estate was matter which addressed itself to sound discretion of chancellor.

10. Attorney and Client.—Attorney, representing devisee instituting suit to settle estate amounting to over $700,000, held properly allowed $12,500 out of estate for services, $500 of which is payable to attorney who instituted suit in Texas for devisee to settle the estate.

11. Executors and Administrators.—Refusal to allow claim of one of executor's sons for compensation for services as an attorney for executors will not be disturbed.

12. Attorney and Client.—Allowance of $18,000 to attorney for executors representing estate amounting to $725,319.09 when converted into cash, where there was considerable litigation over period of years, held not excessive.

13. Executors and Administrators.—Allowance of $102 instead of $988.22 claimed to estate of devisee, who had instituted suit for settlement of estate, as expenses in connection with litigation, will not be disturbed, where there was no itemized statement of expenses.

C. E. RANKIN for appellants.

W. H. SPRAGENS, W. C. McCHORD, TILLMAN & McCALL, SAMUEL HOLDING, HY JACKSON, CHENAULT HUGULEY, CHAS. M. McCHORD and H. S. McELROY for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing in part and affirming in part.

John Taylor died in Marion county on November 7, 1917, at the ripe old age of 91 years. He devised his whole estate to his fourteen nieces and nephews, and appointed J. Clarke Taylor and John Taylor, Jr., two of the nephews, the executors of his will. He empowered the executors to sell and convey all of the estate, giving them a discretion at to the time and manner of sale. After his estate should be converted into cash, he directed that it be distributed among the nieces and nephews. He left a large estate. The appraisement showed personal property valued at $56,023.36; 595 acres of Marion county land valued at $65,000; 26,110 acres of land in five counties in Texas valued at $271,390; and certain real estate in Knoxville, Tenn., which was not appraised. The personal property, when converted into cash amounted to more than its appraised value. The 595 acres of Marion county land was sold for $87,200. It developed that the acreage in the Texas land was 27,512 acres, and this land was sold by the executors for $601,000. The Knoxville real estate, which was not appraised, was sold for $7,477. The total amount of the estate after it was converted into cash was $725,319.09. There were no debts except the expenses incident to the settlement of the estate.

Partial settlements were made by the executors from time to time; the first having been made in October, 1918.

Prior to April 29, 1921, the personal property and the Marion county land had been converted into cash, as well as a part of the Texas land. The total cash which had been received by the executors up to that date was $285,-103, and of this sum $98,000 had been distributed to the devisees. About this date James H. Taylor, one of the devisees, feeling himself aggrieved at the delay in the settlement of the estate, employed W. C. McChord of Springfield, Ky., as his attorney to make an investigation, and, as a result of that investigation, suit was instituted by James H. Taylor for the settlement of the estate.

It appears from the record that J. C. Taylor, one of the executors, had acted as an agent for the testator, John Taylor, for some years prior to his death, and that he and Len Taylor had made a contract with the testator, John Taylor, to care for and support him during the remainder of his life in consideration of, and for the use of, his farm. Because of the agency, the litigation after it started in 1921 divided into two branches, one branch relating to the doings of J. C. Taylor as agent, and the other relating to the settlement of the estate of John Taylor. This case has been before this court twice on the agency branch of the suit. One of the opinions is reported in 211 Ky. 309, 277 S. W. 278, and the other in 218 Ky. 187, 291 S. W. 27. When the suit was instituted to settle the estate, it was sought by the plaintiff to charge the executors with rents due from J. C. Taylor and Len Taylor for the use of the farm and with money due from J. C. Taylor as agent. The amount of commission paid to the executors was attacked, and there was complaint of the failure to file inventory.

It was further charged in the petition that the executors had not been required to pay interest on the funds of the estate in their hands remaining undistributed, and that they had not been diligent in the discharge of their duties in connection with the sale of the Texas land. An amended petition was filed a few months later, enlarging the allegations of the original petition in connection with the alleged failure of the executors to sell the Texas land. Probably other amended petitions were filed in the suit enlarging and amplifying the allegations of the original petition. The executors filed an answer in September, 1921, which was largely a traverse of the

allegations in the petition and amended petition. This answer disclosed that the Marion county land had been sold, and that 2,539 acres of the Texas land had been sold. The answer proceeded with allegations to show that the executors had been diligent in their efforts to carry out the provisions of the will. J. C. Taylor and Len Taylor individually filed an answer to that part of the petition in which it was sought to have the executors charged with rents which they should have paid for the use of the farm.

In October, 1921, five of the devisees filed an answer alleging that the executors should have sold the Texas land in 1919 and 1920. It was alleged in that answer that the executors had not agreed between themselves, and that John Taylor had been inactive, and rendered no aid to J. Clark Taylor, and had announced that he would not do so. It was alleged that the executors should be required to act together and sell the land promptly in the exercise of good judgment, or that they should be removed. The answer denied that it was expedient or necessary to place the lands in the hands of the master commissioner. It also objected to any allowance as compensation to the attorney for plaintiff for his services which should be paid out of the estate, and denied that it was necessary to refer the case to the master commissioner to settle the accounts of the executors. At the same time, two of the devisees representing one share in the estate filed an answer identical in terms with that filed by the five devisees. Another devisee filed an answer in which it was alleged that the executors were doing their duty, and asking that they be allowed to administer the estate without interference.

Up to this time it appears from the record that James H. Taylor was the only devisee in court asking for a settlement of the estate. Some of the others had filed answers, but none of them had offered to join with the plaintiff in his suit. On October 21, 1921, the court referred the case to the master commissioner to audit the accounts of the agency branch of the case, but refused to refer it to the commissioner to audit the accounts of the executors.

About this time James H. Taylor filed a suit in the Texas courts relating to the sale of the Texas land. After the filing of this suit, the executors agreed to proceed

with greater dispatch to market the land, and the suit was dismissed.

In December, 1921, James H. Taylor, through his attorney, filed exceptions to the settlements previously made by the executors. The exceptions were voluminous, and attacked a large percentage of the items included in the settlement. On the day these exceptions were filed the executors filed an amended answer, in which it was admitted by them that through errors there had been duplications, and that these duplications amounted to about $6,000. In January, 1922, James H. Taylor filed an amended petition attacking a number of items in the settlement, and this amended petition was answered by the executors alleging that the items so attacked were correct. Many pleadings were filed by James H. Taylor as well as by J. Clark Taylor, individually and as executor, which it is not necessary to mention. Judgment was entered in the lower court in May, 1924, adjudicating the controversy over rents of the farms and other matters relating to the agency branch of the case. The case was appealed to this court, and reversed and remanded, with directions to make certain corrections in the judgment of the lower court. That branch of the case was again brought to this court, and finally disposed of in the last opinion above mentioned.

In May, 1924, the case was referred to the commissioner to audit and settle the accounts of the executors. Two years later the commissioner filed his report covering the settlement of the executors down to January 1, 1924. He rejected a few items included in the settlement for which the executors had taken credit. Later the executors filed exceptions to the report of the commissioner to the extent that it rejected certain credits which they claimed. Other settlements were made by the executors, and the commissioner made his report in June, 1927, approving the settlements of the executors, with the exception of certain items for which they had taken credit. James H. Taylor, through his attorney, filed exceptions to the report of the commissioner charging that many of the items which had been disposed of in the settlement of the agency branch of the case had been considered by the commissioner in his settlement with the executors, and that they had received credits to which they were not entitled. The executors also filed exceptions to the com-

missioner's report. In July, 1927, the executors filed an amended answer and cross-petition, in which it was alleged that the entire estate, with the exception of some lien notes, had been reduced to cash. They asked for an allowance for their services and also for their attorneys.

Before final orders had been entered in the case, a suit was instituted in Texas by Len Taylor seeking settlement and distribution of the estate. All of the other devisees came into court asking that Len Taylor be enjoined from the prosecution of the Texas suit. The relief was granted, and the suit was later dismissed. In October, 1927, some of the other devisees, through their attorneys, filed exceptions to the report of the commissioner. Final judgment was entered on October 15, 1927. H. S. McElroy, who had been the attorney for the executors throughout the weary years of this litigation, was allowed a fee of $18,000. W. C. McChord, the attorney representing James H. Taylor, who first instituted the suit for a settlement of the estate, was allowed a fee of $12,500. The lower court refused to allow J. C. Taylor, Jr., any fee for his services as attorney, and required the executors to reimburse the estate for the amounts paid him on account of fees and expenses, but the court allowed the executors $2,500 for the benefit of J. C. Taylor, Jr., for clerical assistance. The judgment allowed the executors 5 per cent. on the amounts disbursed by them, except the sum disbursed to themselves, and allowed them $3,500 for expenses. J. C. Taylor was charged personally with all expenses paid by the executors above this sum. The judgment required the executors to account for $2,310.38, one-half of the commission paid to the Pepper Land Company by the executors for the sale of some of the Texas land. The judgment was treated as having refused to allow two items, one for $655.80 and the other $760.08 which the executors claim were paid for taxes on some of the Texas land. The judgment disallowed an item of $778.02 hospital and medical fees paid by them for the testator.

J. Clark Taylor, executor and individually, J. C. Taylor, Jr., Len Taylor, and Virginia A. Hodge have appealed from the judgment of the lower court. All of the other interested parties are made appellees, including John Taylor, the other executor, and also including the attorneys, W. C. McChord, H. S. McElroy, and C. H.

Earnest. The appellees sought, and were granted, a cross-appeal. The appellee H. S. McElroy sought, and was granted a cross-appeal. Printed briefs have been filed by those representing antagonistic interests.

We shall dispose of the controverted items referred to and discussed in the briefs, and treat as abandoned all other exceptions made in the lower court.

The items of $655.80 and $760.08 which were claimed as credit by the executors and rejected by the lower court should have been allowed as credits. . It appears to us that the executors charged themselves with $2,-952.73 which had been involved in the agency branch of the settlement. It fairly well appears that out of this sum had been paid the two items mentioned, and, instead of charging themselves with the amount mentioned, they should have charged themselves with only $1,536.85. As they charged themselves with the full amount coming over from a bank in Texas, they were rightfully entitled to these two items, otherwise they would have no credit for the sums so paid out. J. Clark Taylor had been charged with the $2,952.73 on the agency branch of the case, and had been given credit by the two items for taxes. This led the lower court into the belief that, if the executors were allowed this credit, it would be a duplication, but in making this ruling the lower court evidently overlooked the fact that the executors had charged themselves with the full sum of $2,952.73. The judgment of the lower court as to these two items must be reversed, and the executors should be allowed credit in their settlement by them.

A commission of $4,620.75 was paid to the Pepper Land Company for selling a portion of the Texas lands. J. C. Taylor, Jr., was interested in that company, and received one-half of this commission. J. C. Taylor, Jr., is the son of J. C. Taylor, the executor, and the lower court reached the conclusion that the commission paid to him was illegal, and for that reason refused to allow the executors credit by the sum of $2,310.37 which they had paid as a part of the commission. We cannot agree with the lower court on this point. It may have been bad taste for J. C. Taylor, executor, to make a contract to pay commission to a company in which his son was interested, but it is conceded by all that a commission of 5 per cent. was paid for the sale of the Texas land, and the mere

fact that a part of that commission was to be paid to a company in which the son of one of the executors was interested would not render its payment illegal. This transaction was before J. C. Taylor, Jr., was employed to act as an attorney for the executors. On this point the judgment of the lower court must be reversed, and the executors should be credited by this sum.

The lower court refused to allow the executors vouchers aggregating $778.02 which represented sums that had been paid to nurses and physicians for attention to the testator during his last illness. The executors complain about this. It is stated in briefs that the reason the lower court refused to allow the credit was because J. C. Taylor and Len Taylor individually should have paid these expenses under the contract they had with the testator to support and care for him during his life. It is argued by the attorney for the executors that the contract had in contemplation only the ordinary expenses incident to his support and care as a member of the household. He was old, and required constant attention during his last illness. This the executors were not in position to give him. They sent him to the hospital where he could receive better attention than at home. The expenses probably were no greater at the hospital than if the same attention had been given him at his home. The executors rely on the case of Eastern Kentucky State Hospital v. Goodman et al., 155 Ky. 628, 160 S. W. 171. In that case the father, after having conveyed his farm to his son in consideration of support and maintenance for the remainder of his life, became insane. He was sent to a state hospital, and later the hospital sought to recover the statutory compensation allowed in such cases from the son. The court held that the hospital could not recover. The facts in that case differentiate it from the instant case. The judgment of the lower court should be affirmed as to this item.

J. C. Taylor, executor, complains that the statutory allowance to the executors was made to them jointly, and that the judgment of the lower court means that it shall be divided equally between them. He also insists that he should have been allowed at least $10,000 for extraordinary services. He also complains that the lower court did not allow the executors commission on the amount which was received by them as devisees. On that point he is correct. We do not think it makes any

difference to whom the money is paid when it is distrib-
uted. The personal representative is entitled to the com-
mission allowed for the distribution of the estate. The
question appears to have been decided adversely to the
judgment of the lower court in the case of Avey v. Stear-
man, 145 Ky. 574, 140 S. W. 1055, as well as the case of
Shields v. Shields, 190 Ky. 109, 226 S. W. 392.

As a general rule, an executor who performs all of
the services is entitled to all of the compensation, al-
though there may be a joint executor who rendered no
services. 24 C. J. 992, thus states the rule:

> "As a general rule, the compensation is divided
> in proportion to the services rendered, and a per-
> sonal representative who has rendered no services
> receives no compensation."

11 R. C. L. 232, thus states the rule:

> "Executors are not necessarily entitled to share
> pro rata in the statutory fees; and, if one has sub-
> stantially managed the whole business and had the
> whole responsibility, a court of equity may refuse
> to require him to share statutory fees, or any part
> thereof, with his co-executors."

It seems to be the general rule that, where there are
two or more executors, and one of them does all of the
work, he is entitled to all of the compensation. That rule
was followed in this court in the case of Phillips v. Rich-
ardson, 4 J. J. Marsh. (27 Ky.) 212.

In the case of Garr v. Roy, 50 S. W. 25, 20 Ky. Law
Rep. 1697, this court held that the compensation should
be divided equally between the executors, although one
did all the work, but the opinion shows that the other
was on hand and ready to do whatever was required of
him. In the case of Glover v. Check, 71 S. W. 438, 24 Ky.
Law Rep. 1281, and Id., 72 S. W. 302, 24 Ky. Law Rep.
1783, the court held that the statutory fees should be
divided equally, but that compensation for extraordinary
services should be allowed to the executors rendering
that service. Again, in the case of Couchman v. Bush,
83 S. W. 1039 and 1136, 26 Ky. Law Rep. 1277, this court
directed compensation to be divided equally between co-
executors. It seems to be the rule in this state that,
where one of the executors performs no service, and the

entire service is performed by the other, compensation shall go to the one performing the service, but, where the services are performed jointly, or even where one performs the major portion of the services and the other is ready and willing to do his part, the statutory compensation must be divided equally. We will defer largely to the judgment of the chancellor in cases such as this. He has had the record and the parties before him for many years, and we believe it is the sounder rule to hold in cases such as this that the statutory compensation should be divided equally between the co-executors. The evidence in this case showed that the executors did not work in harmony, but John Taylor, Jr., performed at least a part of the services, and there is little to indicate that he was unwilling to perform fully his proportion of the services. It was unnecessary for both of the executors to make trips to Texas, and, if J. C. Taylor took upon himself that duty, he cannot complain that his co-executor did not likewise make the trips. We have concluded, however, that the statutory fees allowed to the executors jointly should be $29,000, to be divided equally between them, and, in addition, J. C. Taylor, executor, should be allowed $5,000 for extraordinary services. Otherwise the judgment of the chancellor on this point is affirmed.

The amount of the fee allowed to W. C. McChord as attorney for James H. Taylor is very vigorously attacked by some of the parties. We have recited very briefly the range of this litigation. This attorney appears to have been active in his effort to bring about a settlement of the estate, and he testified that he recovered for the estate sums aggregating $30,000. It is probable that this estimate is too high, but we do not believe that his compensation should be measured alone by the amount recovered for the estate. Section 489, Ky. Stats., provides for the allowance of a reasonable compensation for trouble and necessary expenses, in addition to fees and costs, where one party in interest has prosecuted a suit for the benefit of others interested with himself. Such compensation and expenses are to be allowed in actions for the settlement of estates as well as for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common. It appears to us that, if any suit to settle an estate is instituted by one of the interested parties, and prosecuted to judgment, the attor-

ney representing the party is entitled to compensation for his services out of the estate. It is true the section provides that such allowance as may be made shall be paid out of the funds recovered before distribution. But in many suits to settle an estate there may be no effort to recover funds which would have been lost to the estate but for the suit. The compensation is for services rendered by one for the benefit of all the interested parties.

It is provided by section 889, Ky. Stats., in making such allowances, that courts shall have a judicial discretion in regard to the costs. It is true that, where the other parties in interest are represented by attorneys, their interest in the estate shall not be subject to the payment of attorneys representing other interested parties. In this litigation no other party was ever joined with James H. Taylor in the prosecution of his suit to have the estate settled. It cannot be said that a party is represented by an attorney in such a case unless that attorney is seeking the same end as the party who instituted the suit for the settlement of the estate. Many of the devisees in this case filed answers, and some of them sought to reach the executors by cross-petition, but none of them met the issues squarely and offered to join with James H. Taylor in the prosecution of his suit for the settlement of the estate. We have reached the conclusion that W. C. McChord was entitled to an allowance to be paid by the estate for the services which he rendered in representing James H. Taylor. Our conclusion is supported by the opinion of the court in the cases of Clark v. Pepper's Adm'r, 132 Ky. 192, 116 S. W. 353; Louiville Presbyterian Seminary v. Botto, 117 Ky. 962, 80 S. W. 179, 25 Ky. Law Rep. 2137; Mattingly v. Mattingly, 72 S. W. 802, 24 Ky. Law Rep. 2029; McCain v. McCain, 167 Ky. 115, 180 S. W. 56; Baldwin's Executor v. Barber's Executor, 151 Ky. 168, 151 S. W. 686, Ann. Cas. 1915A, 14. All of these cases are not directly in point, but the necessary inference to be drawn from them is that in cases such as this the attorney representing the plaintiff in a suit to settle an estate is entitled to a fee to be paid by the estate.

As to whether the fee is greater than it should have been was a matter which addressed itself to the sound discretion of the chancellor. He was much more familiar with the extent and character of the work done by this

attorney than we are, and we will not disturb his judgment. We will say, however, that this $12,500 allowed to W. C. McChord should cover any sum that should be paid to C. H. Earnest for his services in instituting his suit in Texas, and for that reason $500 of this allowance should be for the use and benefit of C. H. Earnest and to be paid to him by W. C. McChord.

It is earnestly argued that J. C. Taylor, Jr., should be allowed compensation for his services as an attorney for the executors. The chancellor knew the character of the services rendered by him, and we shall not disturb his judgment on this point. He allowed $2,500 for the benefit of J. C. Taylor, Jr., for clerical services, and we have approved the allowance to him of commissions on the sale of a part of the Texas land. The judgment of the chancellor refusing to make an allowance to J. C. Taylor, Jr., as an attorney for the executors is affirmed. It is true the chancellor made the allowance for clerical services, but, treating it as an attorney fee, we will not disturb the finding of the chancellor that it was enough.

Taking into consideration all the facts and circumstances disclosed by this record, and giving due weight to the judgment of the chancellor we have reached the conclusion that the allowance of $18,000 to H. S. McElroy as attorney for the executors was not too much. The judgment of the chancellor on this point is affirmed.

The lower court refused to make any allowance to C. H. Earnest for his services in instituting suit to sell the Texas land. We have disposed of the claim of Mr. Earnest by directing that he be paid $500 out of the fee allowed to Mr. McChord.

It is urged that the estate of James H. Taylor should have been allowed $988.22 as expenses in connection with this litigation instead of $102 which was allowed by the lower court. An examination of the account does not lead us to the conclusion that the judgment of the chancellor should be disturbed. The chancellor had the whole matter before him and, under the circumstances, we will not disturb his judgment on this point.

As to the items indicated in this opniion, the judgment is reversed, and cause remanded, with directions to the lower court to enter judgment as herein directed, but in all other respects the judgment is affirmed on the appeal and on all cross-appeals. The executors will pay

the entire costs of this appeal and cross-appeals out of the funds belonging to the estate, for all of which they shall be given credit in their settlement.