## Miller, By Her Committee v. Keown, Executor, et al.

### (Decided June 5, 1917.)

### Appeal from Ohio Circuit Court.

1. Wills—Insane Persons—Court of Equity May Renounce Will of. —Upon application a court of equity, if it appears to be to the best interest of the widow, may renounce the provisions of a will on behalf of a widow who has been adjudged an imbecile or lunatic, and may direct a copy of its judgment making such renunciation to be filed with the county court, either by the committee, if one, or if none to appoint a committee and direct him to do so.

2. Executors and Administrators—Compensation.—Where the personal property amounted to only about $3,300.00, and all of the other property was a house and lot valued at about $700.00, and the litigation was for the purpose of construing the provisions of the will of the testator as to his widow, and in which suit the committee for the widow who had been adjudged to be insane asked that the court renounce the provisions of the will in his favor and that she be permitted to take her statutory allowance as in cases of intestacy, and the record is taken up largely with testimony as to the mental capacity of the testator, which cannot be done in a collateral proceeding, an allowance to attorneys for executor of $300.00 with a similar sum to attorneys for the committee appointed for the widow are excessive, as is also the allowance of $290.00 to the executor and $50.00 to the committee. The amount involved and the services rendered, which are the standards by which such allowances may be made, do not authorize fees of that size, and a fee of $100.00 to attorneys for each side, and not exceeding five per cent. on the per-

sonal property for the executor and $25.00 to the committee for the services rendered to date are deemed sufficient.

D. H. FRENCH, M. L. HEAVRIN and A. D. KIRK for appellant.

BARNES & SMITH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing on both appeal and cross-appeal.

Dr. R. A. Miller died a resident of Ohio county on December 23, 1913, leaving the appellant, Margaret E. Miller, his widow, surviving him. They had been married since about 1870, and had no children. At the time of his death Dr. Miller was about 72 years of age and his widow about 70 years old.

On May 6, 1913, the decedent prepared and subscribed his holographic will, the substance of which was that he devised the home in which he lived in Fordsville, Kentucky, together with the furniture therein, to his widow, but provided that if she could not live in the house or find a suitable companion to live with her that the property should be sold "and the proceeds be applied to the cash fund"; that his widow be paid out of such cash fund the sum of $25.00 per month so long as she might live, and the portion of the fund remaining at her death, if any, he disposed of to his sister and her son and her two grandchildren in a way that does not concern the questions presented by this record.

The home at Fordsville was a modest building located upon a small lot, and under the proof is worth about the price paid for it, $700.00. The deed to it was obtained on May 14, 1912, and in both the granting clause and the habendum clause the decedent, Dr. Miller, is designated as the sole grantee. Just preceding the habendum and following the description there is this clause shown to have been inserted at the instance and request of the decedent: "It being further understood that in case of the demise of party of second part, his wife, Margaret E. Miller, being the longest liver, then the above property is to belong to her absolutely."

The appellee (plaintiff), Floyd Keown, a nephew and devisee of the testator, was the named executor in his will, and he, directly after the testator's death, presented the will to the county court of Ohio county for probate, which was done by judgment of that court, and plaintiff executed bond and qualified as executor of it. Shortly after his qualification as such executor he brought this

suit against the widow and other devisees in the will for the purpose of obtaining a construction of it and the direction of the court as to how he should execute the trust.

It is alleged in the petition that there exists grave doubts as to whether the testator intended to devise to his widow a fee simple title to the house and lot in question, and as to whether she should be paid $25.00 per month throughout her life if she continued to occupy the house.

It is further alleged, and is indisputably established by the evidence, that the widow was of unsound mind and incapable of renouncing the will, if it was her interest to do so, or of looking after and managing the estate, and in addition to the prayer for a construction of the will the court is asked to appoint a committee for her, or take such other steps as may be necessary to protect her interest.

Shortly after the filing of the suit, and within a month or so after the will had been probated, the appellant, R. I. Miller, a nephew of the widow, was by a judgment duly rendered after hearing appointed committee for her, and he filed answer in which he insisted, (first) that the widow had absolute title to the house and lot under both the terms of the will and because of the clause, *supra,* in the deed, and (second) that she was also entitled to it, as well as to the personal property which the decedent owned at the time of his death, amounting to about $3,300.00, because, as he claimed, all of the property which the decedent had at the time of his death, including the house and lot, was accumulated from the inheritance which Mrs. Miller obtained from her father's estate as early as 1871. At that time she sold a small tract of land which she inherited from her father in Oldham county for $500.00, which it is alleged she delivered to her husband.

In 1899 a vacant lot was purchased in Elizabethtown, Kentucky, for $600.00, the title to which was taken in the name of Mrs. Miller, and directly afterward a dwelling and other structures were erected upon the lot with proceeds, so far as this record shows, belonging to the husband. In 1908, that property was sold for $3,500.00, and the husband collected the proceeds.

From these facts, it is insisted by the committee for the widow that she is entitled to all of the property because her husband held title to same as her trustee; or, if this is not true, that his estate is indebted to her in the

sum of $3,500.00, the value of the house and lot sold in Elizabethtown.

Appropriate pleadings put in issue all of these claims, and upon final hearing the court adjudged that the widow has the absolute title to the house and lot in Fordsville, and the executor was directed to pay to her committee the sum of $20.00 per month until further orders of court, and she was furthermore adjudged to be entitled to $500.00 from her husband's personal property, which the executor was directed to pay to her committee, which $500.00, we surmise (there being nothing in the record to show) was in satisfaction of the $500.00 which the husband had theretofore obtained from the wife.

In addition to what has been stated, the committee alleged in the answer that he had, after his appointment and qualification, renounced the terms of the will for and on behalf of the widow, as is provided by section 1404 of the Kentucky Statutes, and he filed with his answer a copy of such renunciation duly acknowledged by him before a notary public, and which had been previously filed in the county court of Ohio county, and he asked that if the other relief which he sought could not be obtained that his renunciation be either confirmed by the court, or that the court itself make such renunciation for his ward.

From the judgment the widow, by her committee, prosecutes this appeal, and the executor has obtained a cross-appeal in this court.

The insistence of the committee is that the court erred in not adjudging to the widow the absolute ownership of all of the personal property; and in refusing to allow her $25.00 per month instead of $20.00, and he also complains of the allowance made to the executor of $290.30, and to his attorneys of a fee of $300.00. The judgment furthermore allowed to the committee's attorney a fee of $300.00, $200.00 of which was to be paid out of the estate of the decedent and the remaining $100.00 to be paid out of the property adjudged to the widow.

By the cross-appeal the executor seeks a reversal of the judgment because the widow was adjudged to have absolute title to the house and lot, and was also adjudged to be entitled to the $500.00 ordered to be paid to her committee.

Much discussion is indulged in by counsel for both parties upon the questions presented, including the construction of the will, the effect of the clause in the deed,

and the collection of the $3,500.00 purchase price of the house and lot in Elizabethtown by the husband, and perhaps others, but under the view which we take of the facts as presented by the record we do not feel called upon to determine any of those questions, for we are convinced that it was the duty of the court, under the facts presented, to have renounced the terms of the will on behalf of the widow, or to have given its endorsement to the renunciation made by the committee, for we are convinced that the testator was the owner of the property free from any claim of his wife as *cestui que trust,* or otherwise.  The only property of the wife, if any, which the husband ever appropriated, according to the record, was the $500.00 which she obtained for land inherited from her father as far back as 1871, long before the Weissinger act of 1894 became a law.  At that time the law did not make the wife's property her separate estate, and her personal property when reduced to possession by the husband became absolutely his.  There is not an intimation that he took possession of her property, if he did at all, under any sort of agreement or promise to reimburse her or to hold it in trust for her. This prevents this case from coming within the rule announced in the case of Bohannon v. Bohannon, 29 Ky. Law Rep. 143, referred to and discussed in Morgan v. Lewis, 172 Ky. 813, and similar cases.  Therefore, when in 1899 the lot was purchased in Elizabethtown and the deed made to the wife, the consideration paid belonged to the husband, and the proof shows that all of the improvements made on that lot were with his means.  This rather constituted the wife trustee of her husband than him her trustee.  She held the bare legal title, but he was the beneficial owner and when he took the proceeds of the sale of the lot, it was but restoring the parties to their original status, and the cases relied upon from this and other courts, as well as authorities from text books, do not apply.

The renunciation which the committee filed with the county court, and which was done within less than a year after the probate of the will, was acknowledged before a notary public instead of the clerk, but we are inclined to the belief that this was a sufficient compliance with the statute, even if the renunciation made by another for and on behalf of an insane person should be done under the terms of the statute.  The statute requires the renunciation to be either acknowledged before the clerk or

before a subscribing witness. The fact that the notary public who took the acknowledgment did so in his official capacity does not relieve it from having been taken before him as an individual. However, we think that such acknowledgment before the notary is at least a substantial compliance with that part of the statute requiring the renunciation to be acknowledged before the clerk. The purpose of the acknowledgment was to furnish official proof that the renunciation had been duly executed, and at the time of the passage of the section no one but the clerk of the county court or his deputy could take an acknowledgment to such documents, but since that time notaries public have been authorized by statute to take such acknowledgments in this state. But, however this may be, the law is that insane persons, idiots and others who are legally incapacitated are the wards of chancery courts, especially when they and their property are duly brought before the court for the purpose of administration, and that the court under those conditions may itself renounce the provisions of a will on behalf of such ward if it is to the ward's interest that the renunciation be made.

In the case of Harding's Admr. v. Harding's Ex'r, 140 Ky. 277, this precise question was before this court, and while it was recognized that the right of election given by the section, *supra,* of the statute to the widow, and by section 2067 of the statute to other devisees, was a personal one, still if the person entitled to it was at the time the election should be made under legal incapacity to make it, he could not be held responsible for a failure to exercise his choice when he was incapable of choosing, and that the court under such circumstances would make the choice for him. In treating of the authority of the court to act in the premises for and on behalf of those who are incompetent to do so for themselves, the court said:

"Coming now to the question of the insanity of the husband, we are unable to perceive how this fact can help the case for the administrator. If the devisee had survived the probate we do not doubt that the court in consideration of his sanity might and would have elected for him to renounce the will upon application made during his life by his committee or trustee, if such a course was shown to be beneficial to the interest of the lunatic. Infants and persons of unsound mind are wards of the court; and it is not only the duty but the pleasure of

the court to protect, when it can, their interest.    And so, when the law gives to them a beneficial right that they are deprived by minority or mental incapacity of the privilege of accepting, the court if appealed to should and will protect their interest.    The fact that the right to elect is a personal one does not interfere with the right of the court to elect when the individual who might make the election is alive but incapable of doing so.    Nor does it conflict with the principle we have announced that when the person who might make the election dies, the right of election dies with him.    The right attaches at the time the will is probated to the person of the devisee, and lives if he does during the period within which it may be exercised, and within this time he may make the election if capable of doing so, or if incapable but living, the chancellor may make it for him.    Re estate of Andrews, 17 L. R. A. 296; Nailor v. Nailor, 4 Dana 339; Bonnie v. Haldeman, 102 S. W. 308; VanSteenwyck v. Washburn, 50 Wis. 483, 48 Amer. Rep. 532; Wright v. West, 2 Lea (Tenn.) 78, 31 Am. Rep. 586; Page on Wills, page 719.''

In addition to that case, and the authorities therein referred to, the well-considered case of Andrews v. Bassett, 92 Mich. 449, 17 L. R. A. 296, is directly in point, and the notes to the case by the editor of the publication last referred to show the almost unanimous endorsement of the courts of last resort of the rule as laid down in the Harding case.

Indeed, it is difficult to conceive that it could be otherwise.    The purpose of allowing such renunciation is to enable the one in whose behalf it is given to benefit himself by exercising his right of election, and if the case is such that benefits would necessarily follow, it would be a grave injustice and glaringly inequitable to withdraw the right from one who is not only the ward of the court, but who is incapable of making a choice, and who in every other particular has his rights as well as his property guarded and administered by the protecting and vigilant hand of the chancellor.

Under the terms of sub-section 5 of section 1403 of the Kentucky Statutes, the widow of an intestate, or after she renounces his will if he died testate, shall receive from his estate personal property or money on hand or in the bank to the amount of $750.00, which is free from distribution and which shall be set apart to her by the appraisers of the estate.    Section 2132 provides that the

surviving spouse, in case of intestacy or renunciation of the will of the deceased, shall be entitled to an absolute estate in one-half of the surplus personalty left by the decedent. Applying these two sections to the present case, Mrs. Miller would be entitled to $750.00 of personal property or cash on hand before any distribution was made of the balance, and would be entitled to an absolute estate in one-half of such balance. We think that there can be no question but that it would be largely to her interest and much more beneficial to her that the will of her husband be renounced and that she take of his estate that which would be allowed her as widow in case of her husband's intestacy.

In addition to the personal property dealt with by the sections just referred to, the widow would, under the terms of section 1707 of the Kentucky Statutes, be allowed the use of the house and lot in Fordsville as a homestead so long as she occupied it, either in person or by tenant, as it is shown not to be worth exceeding $1,000.00. So then if the will were renounced the widow could obtain the proceeds of the rental of that house and lot and the property which would be allotted to her as being free from distribution and one-half absolutely of the remainder of the personalty.

We think there can be no question but that the court should have renounced the will and have directed such renunciation to be filed with the county court of Ohio county, and adjudged the widow to be entitled to the property as in case of intestacy of her husband and as we have indicated.

There is another matter which, from the record before us, and the utter incapacity of one of the litigants, demands consideration at our hands. This appeal is from the entire judgment, and in it the attorneys for the executor were allowed a fee of $300.00, and the same amount was allowed to attorneys for the committee of Mrs. Miller. The executor was allowed $157.25, which is the maximum statutory allowance of five per cent. on the entire sum of personal property. In addition to this he was allowed the sum of $133.05 for alleged expenses, and $2.50 per day for each day to which he gave his trust estate any attention.

In regard to the attorney fees, this court has always adopted the course of liberality in their allowance, as we believe that "the laborer is worthy of his hire," and should be well paid for his services. But in estimating

and allowing such fees two things are to be considered: one is the amount involved, and the other is the extent of the services performed. The personal property of this estate is about $3,300.00; the house and lot has a valuation not to exceed $700.00, which would make the entire estate worth $4,000.00. The record is not unusually large, and fully one-half of the depositions were taken upon the issue of the mental capacity of the testator, a question which could not possibly have any bearing upon the issues in this case, as it is conclusively presumed from the judgment of probate that the testator was mentally capacitated to execute the will, and that it was done free from undue influences as well as legally executed. Harl v. Varian, 175 Ky., page 468, and authorities therein cited. But, even including those depositions, the proof could have been taken by a stenographer within two days at the outside, and perhaps within a shorter time.

In the petition attention is called to the right of the widow to renounce the will, as will be seen from the quotation which we have made from that pleading. In due time the committee by appropriate pleading asked that this be done. As we have found, such an order ought to have been made, and if made at that time there would have been no necessity to take any proof whatever.

Notwithstanding our inclination to be liberal with attorneys in allowing them fees, we find ourselves utterly unable to endorse what we are confident are excessive allowances found in this record and which are totally disproportionate when measured by the standards, *supra*. Neither is a fee to be gauged by the number of attorneys employed. It is always fixed regardless of that fact, and it is our unanimous opinion that a fee to the attorneys for each side of one hundred dollars ($100.00) is all that the facts of this record will justify.

Turning now to the allowance made to the executor, it is equally apparent that it is entirely unjustified. Even the statute does not fix his maximum allowance at a sum greater than five per cent., which in this case is represented by the item of $157.25 allowed to him, and we have examined his additional account of $133.05 and find that it is composed mostly by charging the estate $2.50 for each trip made to the county seat, or to any other place when anything would be done in connection with the estate, incidentally or otherwise. The very purpose of the five per cent. allowance is to take care of and make

payment for such loss of time, for if not it would be difficult to see for what purpose the allowance would be made.

Other items of ten dollars and less are for the taking of depositions, which is also the devoting of time for which the statutory allowance is intended to cover. We are therefore convinced that no part of the $133.25 should have been allowed to the executor, as the percentage allowance was amply sufficient to compensate him for the time which he lost and for the services which he rendered.

There is an allowance to the committee of $50.00, which we think is double the amount that should have been made. It will be seen that the combined allowances amount to practically one-third of the personal estate, and that, too, before the ending of the first round between the litigants contending over it. Should we give our endorsement to these allowances we could but feel that we were derelict in our bounden duty toward the unfortunate imbecile whom the law has placed under the protecting care of the courts, whose duty it is to shield her estate from needless extravagance and reckless dissipation.

The allowances herein ordered should be paid out of the estate.

Wherefore, the judgment is reversed both on appeal and cross-appeal, with directions to enter a judgment as indicated, and for proceedings consistent with this opinion.