240 So.2d 93 (1970)
In re ESTATE of Charles V. MAXCY, Deceased.
L. Elizabeth MAXCY, As Guardian Ad Litem for the Minor Child, Marivon Maxcy, and Irene H. Maxcy, Widow of Decedent and Co-Executor Withdrawn, Appellants,
v.
CITIZENS NATIONAL BANK OF ORLANDO, As Executor of the Estate of Charles V. Maxcy, Deceased, Ward, Bradford & Oswald, As Attorneys for Said Bank and Estate, and H. James Brett, As Attorney for Said Estate and for Irene H. Maxcy, One of the Co-Executors, Appellees.
No. 69-414.
District Court of Appeal of Florida, Second District.
October 2, 1970.
Rehearings Denied November 5, 1970.
Owen Rice, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for L. Elizabeth Maxcy as Guardian ad litem for the minor child Marivon Maxcy.
Fred T. Saussy, Tampa, for Irene H. Maxcy.
Gerald S. Livingston, of Ward, Bradford & Oswald, Orlando, for Bank, and Ward, Bradford and Oswald.
Melton & Beemer, Orlando, and Tom Whitaker, Tampa, for H. James Brett.
PIERCE, Judge.
This is an appeal from orders entered by the County Judge's Court for Highlands County, awarding "ordinary" and "extraordinary" fees to Citizens National Bank of Orlando (hereinafter "the Bank") as co-executor; Ward, Bradfod & Oswald (hereinafter W-B-O) as attorneys for the executor Bank; and H. James Brett, as one-time attorney for Irene H. Maxcy, as co-executor; for services in connection with the probate of the estate of Charles V. Maxcy, deceased.
W-B-O and the Bank have heretofore filed joint motion to dismiss the appeal for lack of jurisdiction and Mr. Brett has filed motion to dismiss, sever and strike. Rulings on the motions were deferred, and in view of our disposition on the merits, rulings will be withheld.
*94 After probate of the estate for all practical purposes had been completed except for costs of administration, the County Judge held hearings to determine allowance of fees to the personal representatives and their attorneys. The personal representatives-executors were the Bank and Irene H. Maxcy, the widow. Over the course of administration the widow Maxcy had three lawyers, Harry Lee, H. James Brett, and F.T. Saussy,[1] in that order. The Bank at all times had its regular counsel, W-B-O.
Charles V. Maxcy, the deceased, was murdered in his home in Sebring on October 3, 1966. He left a will, dated May 14, 1964, appointing his widow and the Bank as co-executors, and clothing them with exemplary power and authority, without bond, to sell, manage, handle and otherwise deal in the property, real and personal, of his estate the same as he himself could have done, if living.
The Bank and the widow, although co-executors, were antagonistic toward each other from the time the will was admitted to probate on October 18, 1966. They could not agree on what lawyer, or firm of lawyers, would represent the estate and the co-executors. The widow was intent upon employing Mr. Harry Lee, while the Bank was equally intent upon employing its regular counsel, W-B-O. So they "solved" the dilemma by each employing separate counsel of choice. Accordingly, W-B-O has represented the Bank as co-executor continuously since October, 1966. The widow, however, has had a succession of attorneys, first employing Mr. Lee in October, 1966, terminating his employment in May, 1967, then employing Mr. Brett, who represented her until March, 1968, at which time she employed Mr. Saussy, who was her legal counsel until her termination as co-executor in October, 1968.
By order entered on June 14, 1967, the Court allowed Mr. Lee a fee of $10,000. The widow, Irene H. Maxcy, notwithstanding she was implicated in her deceased husband's violent death, was awarded a total fee of $15,000 prior to her resignation as co-executor, in installments of $5,000 and $10,000 respectively. These fees, though apparently agreed to, were, as we read the record, excessive in relation to their respective services in connection with the estate. They have already been paid, and by the passage of time, without any appeal or apparently any contest or objection by anyone, are now "water over the dam".
But the fees involved in the instant appeal, namely, the Bank for "ordinary" and "extraordinary" services as co-executor, and to Mr. Brett and W-B-O for "ordinary" and "extraordinary" services as attorneys for the co-executors, have not been paid and are directly before this Court for examination.
Two orders are here involved, both entered by the County Judge on June 23, 1969. One order granted a petition of Mr. Brett, filed on March 15, 1968, to withdraw as attorney for Mrs. Maxcy as co-executor, and awarding him $20,000 as "ordinary" and "extraordinary" fees for his services.
The other order allowed the Bank a total of $43,820 for co-executor's fees, broken down into $30,000 for "ordinary" services and $13,820 for "extraordinary" services. This $43,820, added to the $15,000 theretofore paid to the widow, aggregate the sum of $58,820 to the co-executors for their services.
This latter order also awarded a total of $50,932 to W-B-O as attorneys for the Bank as co-executor, broken down into $25,000 for "ordinary" services and $25,932 for "extraordinary" services. These latter sums for the attorneys, added to the $10,000 paid to Mr. Lee and the $20,000 allowed to Mr. Brett, aggregate a total of $80,932 awarded for legal services to the estate. And it is assumed there will be subsequent claims for additional compensation for services rendered since November 30, 1968.
*95 These fees allowed to the Bank and the lawyers reflect to us a surfeited liberality in the dispensation of estate assets, which after all are nothing more nor less than trust funds.
The two orders of June 23, 1969 presume to break down the fees allowed the Bank and lawyers for "ordinary" services and "extraordinary" services. It is unnecessary here to go into detail, and we do not intend to do so, upon each estate item or matter as to which the Bank and/or the attorneys allegedly performed services. Suffice to say that, in practically each instance, the sum or sums allowed is in excess of what in our opinion, in fairness to the minor beneficiaries, would be reasonable and just as normal costs of administration.
First, it is urgently urged on behalf of the minor beneficiaries that multiple attorneys for an executor or co-executors are not allowable in this State. While Florida law seems to permit of multiple executors of a decedent's estate, it is questionable as to a multiplicity of attorneys representing a personal representative, particularly separate attorneys to represent each of a plurality of personal representatives. There is no Florida statute covering the precise point. And the Florida cases are not conclusive.
However, the prevailing view in other jurisdictions, and certainly the more rational view in our opinion, is that a plurality of attorneys to represent either an executor or co-executors of an estate, to be paid out of estate funds, is not generally permissible. In re Burrow's Will, Sur., 139 N.Y.S.2d 135, aff. 286 App.Div. 1092, 145 N.Y.S.2d 585 (1955); In re Greenberg's Estate, 1957, 15 Ill. App.2d 414, 146 N.E.2d 404; Miller v. Keown, 1917, 176 Ky. 117, 195 S.W. 430. The County Judge in his orders appealed here acknowledged the uncertainty of the law in this respect and then reconciled the uncertainty in favor of multiple lawyers.
Co-executors must act as an entity in matters pertaining to the administration of an estate. Any other rule would lead to confusion and create unnecessary charges against estate funds. If each co-executor were to be allowed independent counsel it might well be that in the approach to every decision there would be as many opinions as co-executors. The legal principle of unit control must govern in the administration of a decedent's estate. The least the co-executors here could have done, immediately after their first disagreement, would have been to take the matter directly to the Probate Court for decision as to whether multiple attorneys should have been employed.
The fact remains, however, that numerous lawyers were engaged in behalf of the co-executors. And while there was never any specific order authorizing it, yet by the same token, there was never any specific objection to it. So we cannot, particularly at this late date, invalidate or nullify any of their actions in connection with the estate, even though disapproving their plural engagement. But we do hold that the two or more lawyers for the co-executors may not receive, in the aggregate, more in fees than what one attorney would have received for performing the requisite legal services.
There is another and more overpowering reason why these unnecessary and duplicating fees should have and could have been avoided. That is simply that the widow should never have been appointed co-executor in the first place. The County Judge found in so many words in the orders appealed here that the widow "was involved in the planning of the murder of her late husband". The rationale of Florida law distinctly frowns upon a person in the position of the instant widow profiting in any manner from the estate of the murdered decedent. F.S. § 731.31, F.S.A.; Carter v. Carter, Fla. 1956, 88 So.2d 153. If the County Judge had refused to appoint her co-executor in the beginning, even though she was named in the will, such refusal would have been proper. And in such event, the subsequent hearings, *96 wranglings, disagreements, conflicts, misunderstandings, hiring and firing of attorneys for the widow, all providing the setting for multitudinous claims against the estate, would effectually have been avoided. We cannot sanction the action of the lower Court in permitting this situation to develop.
Inasmuch as this matter must go back to the lower Court, we might, for the further guidance of that Court "think out loud" upon one or two matters that occur to us here.
It is a clearly recognized principle in the administration of estates that counsel may be reimbursed from the estate only for the reasonable value of the necessary legal services he renders which benefit the estate, not the executor personally. And this principle is equally as applicable in the case of co-executors, assuming arguendo that separate counsel could represent each co-executor. Such separate counsel should not expect, and should not receive, fees for services that do not represent a distinct benefit to the estate. Such services, or such portion thereof, as inure to the benefit of the executor or co-executors primarily should not be compensable out of the estate funds. This principle should be borne in mind in future proceedings in this case.
Also, there must be observed at all times a distinct line of demarcation between the services performed by the executor and compensable as such, and the services performed by the attorney for the executor and compensable as such.
Having expressed our disapproval of the amount of fees awarded both the Bank and the attorneys for the co-executors, we could, with full right and authority, go forward ourselves and proceed to fix the various fees to be allowed as we would deem fair and reasonable, and have on occasions done so. See Poling v. City Bank & Trust Company of St. Petersburg, Fla. App. 1966, 189 So.2d 176; F.S. § 59.34, F.S.A. But in the instant case, we do not choose to take that course, at least at this time. We prefer that the able County Judge re-examine the entire matter of overall fees and restructure them in line with our views as we have endeavored to indicate them here. We would hope that, in the interest of conserving the remaining assets of the estate for the maximum benefit of the minor beneficiaries, this may be done fairly and expeditiously.
The orders appealed are therefore reversed and the cause remanded for further proceedings herein not inconsistent with our views.
HOBSON, C.J., and McNULTY, J., concur.
NOTES
[1] It should be noted that Mr. Saussy has asked for no fees.