574 P.2d 67

In the Matter of the ESTATE of Dick
STEPHENS, Deceased.

Kate GARDNER, Appellant,

v.

Betty AMATOR, Appellee.

No. 1 CA–CIV 3423.

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 10, 1978.

Cunningham, Goodson & Tiffany, Ltd. by John F. Goodson and James W. Ryan, Phoenix, for appellant.

Jay M. Abbey, Pinetop, for appellee; Hill & Savoy by John E. Savoy and Cheryl K. Hendrix, Phoenix, on brief.

## OPINION

NELSON, Judge.

This is an appeal from the Superior Court's approval of the final accounting and decree of distribution in the Estate of Dick Stephens, the administration of which has been plagued by disharmony since its inception. Mr. Stephens died on March 19, 1972, and the Valley National Bank was subsequently appointed executor of his estate. The decedent's brother died in close proximity to decedent, and his will also sought the Valley National Bank as executor. Both being ranch owners in the same area, there were numerous potential conflicts, and the bank declined both positions. For this reason, Betty Jean Amator (Betty) and Katherine L. Gardner (Kate), the testator's daughters, were appointed as co-administratrices of the estate in June of 1972. The two administratrices served with varying degrees of discord, which included Betty locking Kate off the estate property, opening a separate estate checking account that would not require Kate's signature, and filing a First Account and Report without Kate's concurrence.

This complete incompatibility resulted in Fannie Stephens, the decedent's widow and administratrices' mother, obtaining the court's removal of the two women as administratrices and her appointment to the position of administratrix. It is from her final accounting for the estate and its approval by the trial court that Kate now appeals.

Most of the issues raised on appeal are a result of the two administratrices' inability to concur on their decisions and failure to bring the matter before the trial court prior to the complete breakdown of administration.

Appellant claims that the trial court erred in approving Fannie Stephens' final account in six important respects. She alleges: (1) the interpretation of the will which gave the ranch cattle to Fannie Stephens was incorrect; (2) the estate's attorney should have been surcharged for the estate tax penalties incurred through late filing; (3) the acts of one co-administratrix without the concurrence of the other co-administratrix should be invalidated; (4) the court should have made an equal division of administratrices' fees; (5) Kate should have been allowed her separate attorneys' fees; (6) the court should not have approved payments to Betty's husband for his services in maintaining the estate's ranching property.

Since the trial court did err in some of its interpretations, we must reverse its decision and remand the case for further proceedings in accord with this decision.

## WILL INTERPRETATION

■ Appellant's first allegation of error stems from her contention that the trial court improperly interpreted two paragraphs of the will. The disputed sections are as follows:

"*FIFTH*: I direct that all my interest in the ranch owned by my wife and me, located on the Sandy, Mohave County, Arizona, together with all improvements and appurtenances, including any and all other items used in connection therewith, also ranch equipment, *livestock*, etc., in other words, the complete going ranch, except personal belongings, be sold as soon as conveniently possible for the best price and upon the best terms obtainable, but subject to approval by my wife, FANNIE STEPHENS, provided she is then alive, otherwise subject to the approval of our children, and if neither my wife nor both of our children are alive then the one child remaining. And, it is my recommendation to my wife that she join in such sale if the price and terms are satisfactory.

*SIXTH*: If she shall survive me by a period of six (6) months, I give, devise and bequeath to my wife, FANNIE STEPHENS, whatsoever real property, free from any and all encumbrances thereon, which we may own and occupy as a home or homes at the time of my death, together with all articles, goods and effects of personal, household and domestic use or ornament, including *domestic livestock* and motor vehicles. If my wife shall not survive me by a period of six (6) months, I direct that all of the foregoing described property shall form a part of my residuary estate and pass as hereinafter provided with respect thereto; provided, however, that my Executor may sell any or all of such property after the death of my wife as it may deem advisable under the circumstances." (Emphasis added)

The trial court determined that these sections devised outright to Fannie Stephens all the ranch cattle. We must disagree with that interpretation.

There are several well-established rules which have been repeatedly followed by the Arizona courts in their construction of wills. The most pertinent of these to our situation was succinctly stated in *In re Estate of Gardiner*, 5 Ariz.App. 239, 425 P.2d 427 (1967) as follows:

"The basic rule for the interpretation of all wills and trusts is to ascertain the intent of the settlor or testator. The intent is to be ascertained from the contents within the four corners of the instrument, including the general plan or scheme thereof, and when necessary or appropriate, the circumstances under which the will was made. *Newhall v. McGill*, 69 Ariz. 259, 212 P.2d 764 (1949)." 5 Ariz.App. at 240, 241, 425 P.2d at 428, 429.

In *Pass v. Stephens*, the Arizona Supreme Court said: "Every clause, and even every word, should, when possible, have assigned to it some meaning." 22 Ariz. 461 at 466, 198 P. 712 at 714 (1921).

We believe that viewing these paragraphs of the will together, there can be no doubt as to what is meant. In Paragraph *Fifth* the testator directed that the going ranch including "livestock" be sold. In Paragraph *Sixth* he bequeathed the family home, personal belongings, motor vehicles and "domestic livestock". The context makes these words clear. The testator did not intend a dictionary reading of livestock—he meant for the ranching operation, including cattle, to be sold, while all personal possessions, including household pets and family horses, were to go to his wife outright. Any other reading would make the addition of the word "domestic" by the testator meaningless in direct contradiction of his intent.

We therefor find the award to Fannie Stephens of the proceeds of sale of the ranch cattle erroneous. Those proceeds should be considered as a part of the sale of the "going ranch" and distributed accordingly.

### ESTATE TAX PENALTIES; ATTORNEY'S LIABILITY

■ Appellant asks us to determine on this review whether the estate's attorney,

John Savoy, should be held liable for failure to timely file the estate tax return. Further, appellant seeks to have us rule that the estate tax liability should be assessed against his attorney's fees.

The estate was assessed a considerable sum ($13,851.00 for late filing and $5,023.49 interest) by the Internal Revenue Service due to its failure to have an estate tax return filed within the allotted time period, which included one extension.

Several cases hold administratrices, accountants and estate attorneys liable for tax penalties incurred by failure to file or incorrectly filed tax returns. *In re Estate of Lohm*, 440 Pa. 268, 269 A.2d 451 (1970); *In re Estate of Jones*, 400 Pa. 545, 162 A.2d 408 (1960). *See also*: 47 A.L.R.3d 507 and *Surcharging an Executor for Negligent Administration of Tax Responsibilities*, 45 Temple Law Quarterly 42 (1971–72).

During the period of estate tax return preparation, it appears that at least an attorney, an accountant and two administratrices (Betty and Kate) all had fiduciary responsibilities to the estate. *See* cases cited in 47 A.L.R.3d 507, *supra*. Although some evidence was offered in the trial court on who was at fault in failing to file, the issue of fiduciary negligence was not specifically tried there and thus cannot be determined by us now on this appeal. While we are aware that some jurisdictions have held estate fiduciaries liable for tax penalties imposed due to their negligence, we cannot from the facts here determine upon whom liability may be imposed. If one of these fiduciaries breached their duty to the estate, further litigation is warranted to determine who is liable and to what extent that liability exists.

In oral argument, the attorneys expressed some concern that the trial court judgment would foreclose by res judicata an action by the estate against any of the fiduciaries for negligence. We hold that the trial court judgment does not include an adjudication on the matter and therefore cannot preclude further litigation on the negligence issue. The record before us does not properly elucidate this claim and we cannot decide it prior to it being heard in the trial court.[1]

## LEGALITY OF A CO–ADMINISTRATRIX ACTING ALONE

Appellant's third allegation of error charges that the trial court circumvented the law when it failed to assess damages against Betty for her extra-legal administration of the estate.

At the outset we note that the probate of this estate was commenced in 1972 prior to the January 1, 1974 effective date of Arizona's version of the Uniform Probate Code. The note following the present section, A.R.S. § 14–1102, provides:

"2. [T]he Act applies to . . . any proceedings in Court then pending except to the extent that in the opinion of the Court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Act;

3. [E]very personal representative, guardian, or conservator holding an appointment on that date continues to hold the appointment but has only the powers conferred by this Act and is subject to the duties and liabilities imposed with respect to any act occurring or done thereafter;"

Pursuant to this advisory note, and seeing no infeasibility, we will when appropriate follow the mandates of the new Code in determining this case. It will not be applicable to those actions predating the Code's effectiveness.

The statutes in effect during the administration of this estate were A.R.S. § 14–473 [2]

---

1. The record also reflects that the penalties and interest assessed by the Internal Revenue Service were being challenged. The result of this litigation will bear on what liability, if any, is to be assessed in the trial court.

2. § 14–473—Authority when more than one personal representative:

"A. (Not applicable).

in 1972 and § 14–3717 [3] in 1974. Both of these statutes mandate the concurrence of co-administratrices except in specified instances, none of which are applicable to this proceeding.

Betty disregarded this statutory duty when she opened a separate account with her mother and proceeded with the estate administration by herself without benefit of her co-administratrix' assistance and advice.

While we are aware that family discord was prevalent during this period, as the trial judge so aptly stated, both sisters were at fault for not seeking the assistance of the court early in the proceedings before the administration of the estate became, in effect, almost impossible.

Kate now asks this court to impose a penalty upon Betty for her improper administration of the estate. While there is no question that Betty was in violation of the statute, the imposition of a penalty is a difficult task. The record is unclear as to the specific losses, if any, that were incurred by the estate due to Betty's breach of duty.

While charging Betty a specified sum as a penalty for her breach of the statute when specific losses are undesignated might be unsatisfactory, advice on resolving the dilemma has been set forth in *In re Estate of Shattuck*, 17 Ariz.App. 103, 495 P.2d 873 (1972). While that case is distinguishable in that some losses incurred by the estate were attributable to the executor's mismanagement, it is an analogous situation and its reasoning merits repeating. There Division II of the Court of Appeals upheld a trial court determination that the executor's fees (he was also the estate's attorney) should be offset by the losses he caused the estate.

While the trial court found that no "shortages" existed in the estate, it attributed certain losses suffered by the estate to the attorney's mismanagement. It also cited certain language from a Montana case which is again enlightening:

"Commissions are allowed an administrator for his care, trouble, and responsibility in the management of the estate . . .; they are the reward of faithful stewardship. . . . The statute contemplates that the personal representative of the decedent shall do something more than wear with dignity the title of administrator; he is expected to earn his commission by attending to the duties of his trust with fidelity and in accordance with the provisions of the law. Consequently, it has been stated that as a general rule the court has discretion to withhold commissions from an administrator who has not given proper attention to the duties of his office." *In re Jennings' Estate*, 74 Mont. 468, 241 P. 655 at 657 (1925).

The court however, following California law, found that a set-off against his fees for losses would be the proper remedy.

Similarly in the instant cause where perhaps no "shortages" were found, it would be possible for the trial court to determine that Betty's singular administration caused the estate losses. Such mishandled duties as the late filing of the tax return and the necessity for protracted litigation undoubtedly caused the estate losses. It is therefore for the trial court to determine whether Betty's breach of the statute caused a loss which would merit an offset against her administratrix' fees.

"B. Where there are two executors or administrators, the act of one alone is effectual if the other is absent from the state, or is unable to serve because of legal disability, or if he has given his co-executor or co-administrator authority in writing to act for both."

3. § 14–3717—Co-representatives; when joint action required:

"If two or more persons are appointed co-representatives and unless the will provides otherwise, the concurrence of all is required

on all acts connected with the administration and distribution of the estate. This restriction does not apply when any co-representative receives and receipts for property due the estate, when the concurrence of all cannot readily be obtained in the time reasonably available for emergency action necessary to preserve the estate, or when a co-representative has been delegated to act for the others. . . ."

## DIVISION OF ADMINISTRATRICES' FEES

Kate also requests this Court to reverse the trial court's ruling dividing administratrices fees. The trial court in its final order awarded $15,000 to Betty and $5,000 to Kate for their services to the estate.

■ In view of our earlier discussion of administratrices fees and our standard of review, that findings of the trial court on a question of fact may not be disturbed on appeal if there is reasonable evidence in the record to sustain them, *In re Estate of Pitt*, 1 Ariz.App. 533, 405 P.2d 471 (1965), we will evaluate the legal principles.

■ While there is no Arizona precedent to guide us in this matter, other jurisdictions have been explicit in their statements on co-administrators' fees. There is no doubt that when one co-administrator has rendered no services, he will receive no compensation. *Taylor v. Taylor*, 223 Ky. 799, 4 S.W.2d 752 (1928). However, there is more diversity of opinion where the services have been disproportionate.

■ Appellee cites us to *Chase v. Lathrop*, 74 Colo. 559, 223 P. 54 (1924), in which the court allowed a great disparity in the distribution of executrices' fees. There the opinion emphatically stated that it was the duty of the trial court to divide the fee as nearly as possible to represent the services rendered. It is important to note that in *Chase* one executrix was an attorney who had spent some portion of every day for a year and a half administering this $422,000 estate. The other executrix was for much of this time out of the state and in Europe, only participating in such perfunctory tasks as signing checks. Therefore, we find this precedent wholly unpersuasive.

Authority which deals more closely with our facts may be found in *In re Faulkes' Will*, 4 A.D.2d 954, 167 N.Y.S.2d 705 (1957), app. dism. 4 N.Y.2d 904, 174 N.Y.S.2d 654, 151 N.E.2d 87 (1958), where the court stated: "A coexecutor who is willing to perform his statutory duties is entitled to participate in the administration and cannot be deprived of his right to earn his commissions by the acts of his co-fiduciary who was responsible for his inability to render services to the estate." 167 N.Y.S.2d at 706. *See also In re Purdy*, 129 Misc. 297, 221 N.Y.S. 468 (1927); *Taylor v. Taylor, supra; Appeal of Goslee*, 132 N.J.Eq. 279, 28 A.2d 110 (1942).

While the trial court testimony is conflicting, it appears that Kate and her husband assisted in running the ranch (estate property) until Betty locked them off the property. Further, Kate hired counsel and sought to become involved in estate administration but was intentionally excluded. This evidence warrants the conclusion that Kate assisted until she was forced out of the administration. Therefore we hold that the fees should be divided equally except to the extent that either administratrix may be surcharged for mismanagement of the estate under our prior discussion.

## ESTATE'S LIABILITY FOR ATTORNEY'S FEES OF CO–ADMINISTRATRICES

■ Appellant claims that the trial judge erred in failing to award her attorney's fees in the final distribution of the estate. Prior to a discussion of the Arizona law in this area, this language from a Florida opinion which substantially addresses our problem, is an appropriate introduction:

"The prevailing view in other jurisdictions, . . . is that a plurality of attorneys to represent either an executor or co-executors of an estate, *to be paid out of estate funds*, is not generally permissible. *In re Burrow's Will*, Sur., 139 N.Y.S.2d 135, aff. 286 App.Div. 1092, 145 N.Y.S.2d 585 (1955); *In re Greenberg's Estate*, 1957, 15 Ill.App.2d 414, 146 N.E.2d 404; *Miller v. Keown*, 1917, 176 Ky. 117, 195 S.W. 430.

\*      \*      \*      \*      \*      \*

Co-executors must act as an entity in matters pertaining to the administration

of an estate. Any other rule would lead to confusion and create unnecessary charges against estate funds. If each co-executor were to be allowed independent counsel it might well be that in the approach to every decision there would be as many opinions as co-executors. The legal principle of unit control must govern in the administration of a decedent's estate. The least the co-executors here could have done, immediately after their first disagreement, would have been to take the matter directly to the Probate Court for decision as to whether multiple attorneys should have been employed." *In re Estate of Maxcy*, 240 So.2d 93 (Fla. App.1970). (Emphasis in original)

With this in mind, A.R.S. § 14–3720 allows for compensation to a personal representative for reasonable attorney's fees incurred in prosecuting or defending an action in good faith on behalf of the estate. This statute would preclude Kate from receiving compensation for any of the attorney's fees she incurred subsequent to the date on which she was removed as administratrix.

Additionally, Kate would not be entitled to reimbursement for attorney's fees during her tenure as administratrix, if they were incurred to protect her personal interests in the estate as beneficiary and not to further her administration. *See Wall v. Malarkey*, 252 Or. 261, 449 P.2d 424 (1969); *In re Estate of Burlein*, 26 A.D.2d 667, 272 N.Y. S.2d 429 (1966). *See also*: 66 A.L.R.2d 1169. Therefore the only circumstances under which Kate may be reimbursed for her attorney's fees is if services rendered by her attorney benefited the estate. "Such separate counsel should not expect, and should not receive, fees for services that do not represent a distinct benefit to the estate. Such services, or such portion thereof, as inure to the benefit of the executor or co-executors primarily should not be compensable out of the estate funds." *In re Estate of Maxcy, supra*, 240 So.2d at 96. *See also* 66 A.L.R.2d 1169, *supra*.

Since we are reversing this cause and remanding it for further consideration, this issue should be reviewed in light of the above discussion for a determination of whether the services rendered by Kate's attorney, or any part thereof, were warranted as benefiting the estate.

## SELF–DEALING BY A CO–ADMINISTRATRIX

■ Appellee in her final question contends that the trial court erred in allowing the payment of Gene Amator's (Betty's husband) fees for the assistance he rendered in the operation of the estate's ranch prior to sale. We find no merit in this contention.

While it is true that Betty engaged in self-dealing by hiring her husband to manage the ranch,[4] in this case such conduct is not fatal to his payment. Prior to the disputes arising between these co-administratrices, both of their husbands worked on the ranch and conducted the cattle roundups. Subsequent to the disagreements and after the loss of hired hands, Gene assumed some of these tasks. The only evidence adduced at trial to impugn Gene's competence at ranching was given by a cattle rancher, who stated that Gene was a dairyman and not an astute cowboy. However, he was passable at these tasks, being himself a dairy farmer.

The statute which is determinative of this allegation is A.R.S. § 14–3713. That statute provides in part:

". . . any transaction which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate except one who has consented after fair disclosure, unless either:

\*  \*  \*  \*  \*  \*

---

4. Since Arizona is a community property state, one-half of Gene's earned income during coverture belonged to Betty. *See* A.R.S. § 25–211.

2. The transaction is approved by the court after notice to interested persons."

In this situation, the issue of Gene Amator's fees was fully litigated in the trial court. Testimony was given, as well as a full itemization of Gene's charges for services and expenditures. The evidence amply supports, and we therefore adhere to the trial judge's findings of fact which determined that Gene's services were in the best interest of the estate and warranted payment.

## CONCLUSION

We reverse the trial court's judgment in this cause and remand the case for further proceedings not inconsistent with this opinion.

FROEB, C. J., and HAIRE, P. J., concur.