937 P.2d 1375

**In the Matter of the ESTATE OF: Dorothy I. KILLEN, Deceased.**

**Ralph McCANNON; Russell McCannon; Carolyn Dixon; Dorothy Landon; June Benoit, Edward McCannon and Mary Ann Pfankus, Petitioners–Appellees,**

v.

**Marion McCANNON, Personal Representative–Appellant.**

No. 1 CA–CV 94–0415.

Court of Appeals of Arizona, Division 1, Department E.

April 18, 1996.

570

A. Paul Blunt, P.C. by A. Paul Blunt, Jay
M. Polk, Scottsdale, for Appellees.

Lesher & Lesher, P.C. by Robert O. Le-
sher, Tucson, for Appellant.

OPINION

GRANT, Presiding Judge.

Appellant, the personal representative of the Dorothy Killen estate, defended Mrs. Killen's will against a charge that it was invalid due to the testator's lack of testamentary capacity. The probate court found the will to be invalid. It denied an award of attorneys' fees to appellant, as personal representative, for defense of the will on the ground that it lacked jurisdiction to make such an award because the judgment regarding validity of the will was on appeal. The court noted that even if it had jurisdiction to award fees, appellant was not entitled to a fee award because he had defended the invalid will only to protect his interest as a beneficiary.

We hold that the probate court had jurisdiction to rule on the attorneys' fees application despite the pending appeal because the fee application was not inextricably tied to the result of the judgment on appeal. We further hold that appellant is entitled to an award of fees from the estate unless the trial court finds that he defended the will in bad faith.

**FACTS AND PROCEDURAL HISTORY**

Appellant Marion McCannon ("Marion") was a nephew of Dorothy Killen and was the major beneficiary of Mrs. Killen's will.[1] Eighteen other beneficiaries were also named. In the will, Mrs. Killen appointed Marion as the personal representative of her estate. Upon Mrs. Killen's death in March 1993, Marion submitted the will for informal probate and was appointed by the probate court as personal representative.

The seven other nieces and nephews of Mrs. Killen ("petitioners") contested the will, arguing that when she made it she was suffering from a paranoid delusion disorder and thus lacked testamentary capacity. They also sought removal of Marion as personal representative.

After a bench trial, the probate court concluded that at the time Mrs. Killen executed her will, she lacked testamentary capacity as the result of a delusional paranoid disorder that influenced the creation and terms of her purported will. It thus declared that the will was invalid and that Mrs. Killen died intestate. The court also removed Marion as personal representative of the estate. In its order, which was entered on November 18, 1993, the court awarded petitioners their attorneys' fees in the amount of $59,331.25 and costs of $6,938.75 to be paid from estate assets. In addition, the order stated, "Respondent [Marion] is hereby denied all attorneys' fees and costs."

On December 14, 1993, Marion, as personal representative and personally, appealed from the court's order.[2] Then on January 5, 1994, he filed with the probate court an application, pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 14–3720, for the estate to pay the attorneys' fees and costs incurred by him as personal representative in the will contest. Petitioners objected to the application on two grounds; first, that because a notice of appeal had been filed the probate court lacked jurisdiction to award fees arising from the matter that was on appeal and, second, that A.R.S. section 14–3720 does not authorize payment of attorneys' fees by the estate when fees are incurred for the personal representative's own benefit rather than the benefit of the estate.

The probate court denied Marion's application. It first noted that Arizona courts have interpreted A.R.S. section 14–3720 to preclude a personal representative from receiving attorneys' fees from the estate when the fees were incurred to protect the administrator's interest as a beneficiary and not to protect the estate itself. The court found that Marion had defended an invalid will and that the defense was clearly for Marion's benefit rather than for the benefit of the estate; thus, Marion's expenses of litigation should not be paid by the estate. Additionally, the court noted that as a general rule,

1. Based on the appraisal of the estate done after Mrs. Killen's death, the value of the money and property bequeathed to Marion was $415,034.62 out of an estate with a total value of $796,917.62.

2. We have affirmed the probate court's judgment declaring the will to be invalid in *Estate of Killen,* 188 Ariz.App. 562, 937 P.2d 1368 (1996).

when a timely appeal has been filed, the trial court loses all jurisdiction, even to award attorneys' fees, except in furtherance of the appeal. Therefore, the court concluded that it lacked jurisdiction to award attorneys' fees to Marion even if he were entitled to them.

Final judgment denying Marion an award of attorneys' fees and costs from the estate was entered on July 26, 1994. He timely appealed from the judgment. We have jurisdiction pursuant to A.R.S. section 12–2101(J).

## DISCUSSION

### A. Jurisdiction of the Trial Court

■ In support of the probate court's ruling, petitioners point out that the court denied Marion all attorneys' fees and costs in its November 18, 1993 order and argue that Marion attempted to obtain a second bite at the apple by filing an application for attorneys' fees while the appeal from the order was pending. They assert that the July 26, 1994, order denying Marion's application for attorneys' fees addressed the same issue previously decided by the trial court. Marion argues that the November order denied his request for an award of attorneys' fees in his favor and against the petitioners but that his subsequent application concerned his request as personal representative for an award of attorneys' fees from the estate as a cost of administration of the estate.

We believe that Marion's characterization of the November order and his subsequent application is correct. In his response to the petition for determination of testacy and removal as personal representative, he asked that petitioners be required to pay all of the attorneys' fees he incurred in defending against the petition. Because this was Marion's only request for fees made prior to entry of the November order, we conclude that the court denied this request. The subsequent application for attorneys' fees sought a fee award from the estate pursuant to A.R.S. section 14–3720. This type of award was not encompassed within Marion's previous request for fees. Therefore, the second fee request was not precluded by the court's November order.

In finding that it did not have jurisdiction to award Marion attorneys' fees from the estate, the probate court relied on *Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 653 P.2d 45 (App.1982), *disapproved in other part, Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 524, 747 P.2d 1218, 1223 (1987). Marion argues on appeal that *Trebilcox* does not control here because it involved a civil action arising from a contract whereas this case is a probate matter. The difference between the actions, Marion points out, is that even after the probate court determined that the will was invalid, the probate proceedings continued, unlike a contract case that typically ends with the judgment that is appealed.

■ Marion argues that *Trebilcox* itself recognized that the court below retains jurisdiction to award fees even after an appeal has been taken when the award is not dependent on the outcome of the appeal. Because A.R.S. section 14–3720 authorizes an award of fees to a personal representative for defending a will regardless of whether the defense is successful, Marion maintains that an award of fees in this action is not dependent on whether his appeal regarding the validity of the will is successful; therefore, he argues, the probate court had jurisdiction to award fees.

We agree. In *Trebilcox*, the court held that the trial court did not have jurisdiction to award attorneys' fees pursuant to A.R.S. section 12–341.01 when a notice of appeal had been filed from the underlying contract claim upon which the award was based. 133 Ariz. at 591, 653 P.2d at 48. In reaching this conclusion, it explained that the general rule is that when an appeal to a higher court has been perfected, the trial court loses all jurisdiction except for actions in furtherance of the appeal. *Id.* at 589, 653 P.2d at 46. *See State v. O'Connor,* 171 Ariz. 19, 21, 827 P.2d 480, 482 (App.1992) (trial court may not render any decision that would defeat or usurp appellate court's jurisdiction of the case on appeal). The *Trebilcox* court noted, however, that this general rule is subject to many well-established exceptions, including one that an appeal from an intermediate or interlocutory order does not divest the trial court

of jurisdiction to proceed with matters not involved in the appeal. *Id.* at 590, 653 P.2d at 47.

Significantly, the *Trebilcox* court reasoned that the award of attorneys' fees in the case before it was "inextricably tied" to the granting of summary judgment to Brown & Bain. *Id.* The award was so tied because under A.R.S. section 12–341.01 the court could award attorneys' fees only to the prevailing party; thus, the entitlement to fees was completely dependent upon the outcome of the appeal of the summary judgment. *Id.* If the appellate court reversed the judgment of the trial court on the merits, the award of attorneys' fees would have been in derogation of the appellate decision rather than in furtherance of the appeal. *Id.* The *Trebilcox* court further noted that other jurisdictions had found that the trial court is without jurisdiction to make an award of attorneys' fees if the award is dependent upon the party to whom the award is made prevailing on appeal but that attorneys' fees may be awarded where the award is not dependent upon the outcome of the appeal. *Id.*

Among the cases cited by the *Trebilcox* court for this rule is *Bailey v. Bailey*, 392 So.2d 49 (Fla.App.1981). In *Bailey*, the trial court awarded the wife her attorneys' fees incurred in fighting a decrease in alimony after the husband appealed from the denial of his motion to modify. In ruling that the trial court had jurisdiction to make such an award, the court explained:

> Whether the trial court lacks jurisdiction depends not simply on the fact that an appeal in the case has been taken and is pending, but rather on the nature of the action being taken by the trial court in relation to the subject matter of the pending appeal. If what the trial court does while the appeal is pending cannot affect or interfere with the subject matter of the appeal, and thus impinge upon the appellate court's power and authority to decide the issues presented to it by the appeal, then the trial court can act. The jurisdic-

tion of the appellate court is exclusive only as to the subject matter of the appeal. 392 So.2d at 52.

The *Bailey* court further noted that because the purpose of an award of attorneys' fees in dissolution proceedings was to equalize the abilities of the parties to secure legal counsel, the trial court could make such an award after an appeal had been filed because the award was not "predicated upon being the successful party in the litigation and [was] thus not dependent on the ultimate outcome of the appeal." *Id.* at 52 n. 7.

■ An award of attorneys' fees from a decedent's estate when the personal representative has defended or prosecuted a proceeding also is not predicated upon the personal representative being successful in the litigation. The controlling statute, A.R.S. section 14–3720, provides:

> If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.

An award of fees under this statute does not depend on whether the personal representative prevails in the trial court or ultimately prevails on appeal; the personal representative need not be the successful party to be entitled to an award of fees and costs from the estate. Thus, an award of fees is not inextricably tied to the outcome of either the probate court proceedings or the appeal.

The judgment on the will contest was an intermediate or interlocutory order in the probate. This order did not end the matter; the probate proceedings could continue with, for example, the marshaling and safeguarding of the estate assets, payment of creditors' claims, and court-approved payments of administration expenses. *See* A.R.S. section 14–1302. The outcome of the appeal concerning the will contest would not affect an award of fees under A.R.S. section 14–3720. Accordingly, the probate court had jurisdiction to enter an order awarding or denying fees to the personal representative even though the appeal of the court's judgment concerning the will contest was pending.[3]

3. Although the probate court has jurisdiction to · make such an award after a notice of appeal has

## B. Denial of Award of Attorneys' Fees and Costs from the Estate

Marion argues that under A.R.S. section 14–3720 he, as personal representative of Mrs. Killen's estate, had a statutory right to reimbursement of the attorneys' fees and costs he incurred in defending the will. He maintains that the probate court made no finding that he had defended the will in bad faith, and, absent such a finding, the court was without statutory power to deny his application for reimbursement of attorneys' fees.

First, we note, as pointed out by Marion, that the personal representative of an estate has a duty to defend the validity of the decedent's will if the will is challenged. The Arizona Supreme Court stated in *In re Monaghan's Estate*, 60 Ariz. 346, 351–52, 137 P.2d 390, 391–92 (1943), that "the executor appointed by will ... must, in duty to his trust, protect the instrument when it is assailed in court." More recently, the supreme court affirmed this rule in *In re Harber's Estate*, 104 Ariz. 79, 89, 449 P.2d 7, 17 (1969), when it adopted the rule set forth in *In re Corotto*, 125 Cal.App.2d 314, 270 P.2d 498 (1954), that "after a will has been admitted to probate, it is the duty of the executor to defend and uphold it against subsequent attack, and that this duty rests primarily upon him and not the legatees and devisees." Even if the will is challenged before it is admitted to probate and a personal representative appointed, the personal representative named in the will has the duty to defend in a will contest. *In re Pitt's Estate*, 1 Ariz.App. 533, 541, 405 P.2d 471, 479 (1965). Thus, as the personal representative named in the will, Marion clearly had a duty to defend Mrs. Killen's will in the will contest.

Nevertheless, the probate court ruled that because Marion defended an invalid will that, if valid, would have given him specific devises from the estate, the defense of the will was for his own benefit rather than the benefit of the estate and thus his expenses of litigation should not be paid from the estate. The

court based this ruling on its belief that Arizona courts have interpreted A.R.S. section 14–3720 as precluding a personal representative from receiving attorneys' fees from the estate when the fees are incurred to protect the administrator's beneficiary interest in the estate and not to protect the estate itself, citing *Matter of Stephens' Estate*, 117 Ariz. 579, 574 P.2d 67 (App.1978).

We do not believe *Stephens* supports the proposition relied on by the probate court. In *Stephens*, the estate was administered by co-executors who did not get along. Although the probate matter and appeal involved interpretation of the will, the validity of the will was not challenged. One of the issues was whether one of the co-executors, Kate, was entitled to an award of attorney's fees from the estate for the fees she had incurred apart from the fees incurred by the other co-executor.

The *Stephens* court first ruled that A.R.S. section 14–3720 precluded Kate from receiving compensation for any of the attorney's fees she incurred subsequent to her removal as an executor of the estate. 117 Ariz. at 585, 574 P.2d at 73. The court also concluded that Kate was entitled to reimbursement for her attorney's fees incurred while she was a co-executor only if the services rendered by her attorney benefitted the estate and not if they were incurred to protect her personal interest as a beneficiary of the estate and not to further her administration. *Id.* The court explained:

"Such separate counsel should not expect, and should not receive, fees for services that do not represent a distinct benefit to the estate. Such services, or such portion thereof, as inure to the benefit of the executor or co-executors primarily should not be compensable out of the estate funds."

*Id. (quoting In re Maxcy's Estate*, 240 So.2d 93, 96 (Fla.App.1970)).

The petitioners also cite *Matter of Estes' Estate*, 134 Ariz. 70, 654 P.2d 4 (App.1982), for the proposition that a personal represen-

---

been filed, we nevertheless believe it is the best practice and most conserving of judicial resources to seek fee awards before the appeal of the underlying judgment or order is taken so that

if an appeal is taken from the disposition of the fee application, that appeal can be included in the appeal from the judgment.

tative is entitled to reimbursement for attorneys' fees only for those services rendered to benefit the estate. In *Estes*, the executor, a bank, was surcharged for negligent mishandling of the decedent's estate. The bank incurred attorneys' fees in defending against the charges that it mismanaged the estate; the validity of the will was not challenged. The *Estes* court noted that an "executor is entitled to reimbursement for attorneys' fees only for services rendered to benefit the estate, not if the services were rendered to protect the executor's personal interest." 134 Ariz. at 80, 654 P.2d at 14. The matter was remanded for a determination of whether the attorneys' fees were for services rendered in good faith to benefit the estate.

As noted, neither *Stephens* nor *Estes* involved a challenge to the validity of the will. Thus, unlike Marion, neither the *Stephens* co-executors nor the *Estes* executor incurred attorneys' fees in defending the will. Although it is not entirely clear from the *Stephens* opinion, it appears that Kate argued for an interpretation of the will that benefitted her. As such, it was proper for the probate court to determine whether the services rendered by Kate's attorney benefitted the estate. Similarly, the bank in *Estes* incurred the attorneys' fees in defending its performance as executor, and it was necessary for the court to decide whether that defense benefitted the estate.

However, in Marion's case, as personal representative he was under a legal duty to defend the validity of the will, regardless of whether the will benefitted him. By definition, the defense to a challenge to the validity of the decedent's will benefits the estate even if it also benefits the personal representative's beneficiary interest in the estate. Therefore, in determining whether to award attorneys' fees from the estate, the probate court need not determine whether the defense of the will against a charge of invalidity

due to lack of testamentary capacity benefits the estate; by definition, it does.[4]

Section 14–3720 does not exclude a right to reimbursement from the estate if the personal representative is also a beneficiary of the will. The statute does not contain such an exclusion for a good reason; the personal representative who is also a devisee of the will should not have to fulfill his duty to defend the validity of the will under the risk that he will have to personally bear the expense of the defense merely because he is also a beneficiary. *See Pitt*, 1 Ariz.App. at 541, 405 P.2d at 479 (because duty and law require an executor to defend in a will contest, he should not be required to defend at his peril). Therefore, the fact that a person named in a will as personal representative is also a devisee does not preclude him from recovering from the estate the attorneys' fees incurred in defending the will, even if defense of the will also benefits the personal representative/devisee.

Under A.R.S. section 14–3720, the only circumstance in which the personal representative defending a will would not be entitled to receive from the estate the necessary expenses and disbursements, including attorneys' fees, is if he did not defend the proceeding in good faith. The probate court made no finding that Marion defended the will in bad faith. The petitioners had alleged that Marion had caused Mrs. Killen to make the will by his undue influence. However, because the probate court found the will invalid due to lack of testamentary capacity, it did not reach the issue of undue influence and made no findings on the question.

Presumably, a finding that Marion knew that Mrs. Killen lacked testamentary capacity and that he nevertheless influenced her to make the will leaving him much of her estate would indicate that he knew the will was invalid and, even as personal representative, acted in bad faith in defending the will. On

---

4. We note that in *In re Nolan's Estate*, 56 Ariz. 366, 108 P.2d 391 (1940), the court concluded that the executrix, who was the only devisee of the will, was defending the will entirely as devisee and legatee and not in her capacity as a trustee of the estate and thus that she, not the estate, should pay the attorneys. However, *Nolan* did not involve a challenge to the validity of the will. Instead, the decedent's widow, who received nothing in the will, sought a widow's allowance that would have left no assets in the estate to pass under the will. If the executrix/devisee prevailed, she would get the entire estate under the will. There was no allegation that the will was invalid due to lack of testamentary capacity.

the other hand, other devisees of the will had an interest in its validity, and Marion may have had a duty to them as well as to the testator, notwithstanding any doubts as to Mrs. Killen's testamentary capacity, to defend the will. *Cf. In re Warren's Estate,* 74 Ariz. 319, 322, 248 P.2d 873, *opinion modified in other part,* 74 Ariz. 385, 249 P.2d 948 (1952) (executor owes distinct and binding duty to devisees to properly account to them concerning management of estate); *In re McCabe's Estate,* 11 Ariz.App. 555, 556, 466 P.2d 774, 775 (App.1970) (executor is representative of all parties interested in estate and has duty to protect estate assets).

 Additionally, we note that a portion of the proceedings below, although it appears to be a relatively small portion, concerned the removal of Marion as personal representative. Although the court did remove Marion, the reason was not due to the allegation of undue influence but instead was for the reasons that the will appointing him was invalid, he was not a resident of Arizona, he had not marshalled the estate assets or transferred bank accounts and real estate to the estate, and he had failed to file a proper inventory and appraisement of the estate assets. Thus, removal of Marion as personal representative does not per se indicate that he defended the will in bad faith.

In any event, the probate court made no finding that Marion did not defend the will in good faith. Therefore, we reverse the denial of an award of attorneys' fees and costs from the estate and remand for further proceedings regarding whether Marion defended the will in bad faith, if the petitioners wish to take that position.

### CONCLUSION

In summary, we hold that the probate court had jurisdiction to determine whether attorneys' fees and costs from the estate should be awarded to Marion. We reverse the denial of Marion's application for an award of attorneys' fees and costs from the estate and remand for a determination of whether he defended the will in good faith and whether his defense of his appointment as personal representative benefitted the estate.

■ Marion requests an award from the estate of his attorneys' fees incurred on appeal. Pursuant to A.R.S. section 14–3720, we grant his request. The amount of the award must be established by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure. However, Marion may not recover the portion of attorneys' fees expended to fight his removal as personal representative.

WEISBERG and PATTERSON, JJ., concur.